663 So.2d 86 (1995)
Darrell W. BYNOG, Plaintiff-Appellee,
v.
Sherry L. BYNOG, Defendant-Appellant.
No. 95-173.
Court of Appeal of Louisiana, Third Circuit.
July 26, 1995.
*87 Ted R. Broyles, II, Leesville, for Darrell W. Bynog.
Scott Westerchil, Leesville, for Sherry L. Bynog.
Before KNOLL, THIBODEAUX, COOKS, SAUNDERS and PETERS, JJ.
COOKS, Judge.
Sherry Bynog appeals a judgment granting her and Darrell Bynog "joint custody" of their two sons but designating the father as primary custodial parent. Sherry Bynog urges the trial court manifestly erred in awarding the children's primary care to the father and further allowing her only limited access to the children provided she exercise her right to visit them solely in the territorial boundaries of the State of Louisiana. Sherry also seeks an award of monthly child support from the father. Finding the trial court's joint custody decree does not comply with clear legislation, we must modify it and render judgment accordingly.

FACTS
The couple were married on September 1, 1988 at Sherry's parents' home who were then domiciled in Leesville, Louisiana. For a period, they resided with her parents before moving to Pennsylvania where they remained for three years. While they resided in Pennsylvania, the Bynogs' first son (Bradley Warner Bynog) was born on May 10, 1991. Two months later, the couple returned to Leesville and stayed "with [Darrell's] parents for a while and with [Sherry's] parents for a while until [they secured] their own place."
Darrell is employed at the United States military complex located at Fort Pork, as a range maintenance operator; and, Sherry worked as a clerk typist for the Louisiana Department of Social Services at the Leesville office. Darrell usually returned home after concluding his work day at 3:30 in the afternoon. Sherry normally returned home an hour later after completing her work duties. During the hours the couple worked, Bradley's needs were attended by Nanna's Day Care, except on occasions when the paternal or maternal grandparents offered to assist for the day. Sherry primarily cared for the daily demands of her son (Bradley) before and after work.
Eventually, the Bynogs acquired a home on a lot adjacent to Darrell's parents' home. Sherry's parents moved to Shirley, Arkansas in 1993.
Sherry gave birth to Chance Browning Bynog on July 16, 1994, the couples' second son, who was only five months old on the date the Bynogs separated. Two weeks prior to Chance's birth, Sherry took a leave of absence from her employment to await his birth and to care for Bradley's needs, as well, at home all day. She remained on maternity leave for six weeks after Chance's birth until Darrell's parents offered to "babysit" both boys during the hours the couple worked. On a typical day, Darrell's mother would walk "next door" to the couple's residence where she usually found the children asleep. Darrell left for work earlier than Sherry who waited for his mother to arrive. Near the *88 noon hour, on most days, the grandmother would return to her home with the children and await the parents return from work. Although Darrell arrived home at 3:30 in the afternoon, as he admitted, usually he visited with his mother, drank coffee, or performed chores until his wife returned home at 4:30 to care for the children. This "babysitting arrangement" continued for nearly three months from September, 1994, six weeks after Chance's birth, to November 23, 1994, the date the couple separated.
Two weeks prior to the parties' actual separation, Sherry sought the advice of counsel and planned to initiate custody and separation proceedings before the district court in Vernon parish. On November 23, 1994 (Thanksgiving Eve), however, Darrell overheard Sherry mumbling in an upstairs bathroom that she intended to leave him. When confronted by Darrell, Sherry confirmed her plans to leave with the children and reside in Shirley, Arkansas at her parents' home. This revelation was disturbing to Darrell, who pled with her to stay with him but she refused. According to Sherry, Darrell told her "he was going to call his father, that he wanted [her] out of the house [and], if [she] wanted a custody fight that he would give it to her ... he wanted [her] to leave that night and [she could not take] the kids." Darrell proceeded downstairs and telephoned the local sheriff's department requesting the dispatcher on duty contact his father, a deputy sheriff, and "send [him] to his house." As Sherry explained she "figured [Darrell] could not throw [her] out of the house," so she decided to "go to bed" assuming she and Darrell would "talk more about separating" the next morning. When Darrell returned upstairs, he had "in hand" a pistol and a clip. Sherry knew Darrell had acquired two clips for use in the pistol. Although he did not threaten her with the pistol; nevertheless, Sherry testified she was frightened because she observed only one clip in Darrell's hand.
When Darrell's father arrived, accompanied by another deputy, he noticed his son had "a nine millimeter pistol in one hand and a clip in the other one." In response to inquiry by his father, Darrell stated he had the gun to keep it away from his wife. His father recalled Darrell was upset and shouting "I want her out of my house." Within minutes, Sherry observed Darrell carrying the youngest boy out of the door and returning to get the oldest boy out of bed. As she concluded, Darrell's father escorted the children to his residence and left them in the care of their grandmother. Realizing the deputies were about to leave her alone in the home with Darrell, still upset with pistol in hand, Sherry decided to dress and leave the family home that night.
On Monday November 28, 1994, Darrell filed a petition for divorce and obtained an ex parte order granting him temporary custody of the children alleging Sherry planned to remove them from the jurisdiction of the court. On the same date, Darrell traveled to Illinois to attend a 10 day work related program placing the children exclusively in the care of his parents and instructing them not to allow Sherry to leave with them. Sherry filed a reconventional petition and further sought sole custody of the children.
After a hearing, the trial judge awarded the parties "joint custody" of the children. However, he designated Darrell as the "primary custodial parent" and granted Sherry only visitation on alternate weekends, major holidays, plus four separate one week periods to be agreed upon by the parties. The order additionally provided Sherry could not exercise her visitation privileges outside the jurisdiction of this State.
Sherry filed the present appeal and assigns the trial court erred in the particulars mentioned earlier. We find her contentions meritorious.

DISCUSSION
Offering reasons for his decision to name Darrell "domiciliary parent," the trial judge homed in on "stability" as the factor which persuaded him the best interest of the children require they remain "in the same locale with the same people to whom they have been accustomed throughout the majority of their lives." He also placed great significance on the care provided by the paternal grandmother following the birth of the last child.
*89 Although custody decisions ultimately must turn on the "best interest" of the children affected, trial judges are not permitted to overlook the factors legislatively enacted to guide their deliberations or point to one factor over all the others which may favor a contrary custody placement. Louisiana Civil Code Article 134.[1]
In 1981 the Louisiana legislature adopted an act authorizing joint custody of children after separation or divorce. Strengthened by later amendment, the Act now requires trial judges to award "joint custody" in all cases absent agreement of the parents, except where circumstances dictate another arrangement will serve the "best interest of the children." [2] Once joint custody is deemed best, a trial judge is not free to demand or implement a plan which in operation forces either parent to play the role of a mere "visitor" in a child's life. Christian v. Christian, 535 So.2d 842 (La.App. 2 Cir. 1988); Foy v. Foy, 505 So.2d 850 (La.App. 2 Cir.1987); Carroway v. Carroway, 441 So.2d 494 (La.App. 2 Cir.1983); Adams v. Adams, 441 So.2d 490 (La.App. 2 Cir.1983). La.R.S. 9:335(A)(2)(b), also recently recast and amended, further expresses in mandatory terms "to the extent feasible, physical custody of the children shall be shared equally." Discussing the Amendment and reenactment of the pertinent codal and statutory provisions containing this mandatory language, the court in Broussard v. Broussard, 646 So.2d 478 (La.App. 4 Cir.1994) noted:
"Prior to the 1993 legislative session, Louisiana Civil Code Article 131(D) provided:
D. For purposes of this Article, "joint custody, shall mean the parents shall, to the extent feasible, share the physical custody of children of the marriage. In making an award of physical custody, the court shall consider, among other things, the factors enumerated in Paragraph ©(2). Joint custody shall also mean that the parents shall enjoy the natural cotutorship of such children in accordance with Article 250, subject to the plan of implementation effected pursuant to Paragraph A of this Article. Physical care and custody shall be shared by the parents in such a way as to assure a child of frequent and continuing contact with both parents. An award of joint custody obligates the parties to exchange information concerning the health, education, and welfare of the minor child; and, unless allocated, apportioned, or decreed, the parents or parties shall confer with one another in the exercise of decision-making rights, responsibilities, and authority. By Acts 1993, No. 261, Section 1, effective January 1, 1994,
Article 131 was amended and reenacted to read as follows:
In a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child.
Section 5 of Act 261, also effective January 1, 1994, enacted Louisiana Revised Statute 9:335 to amend and reenact Civil Code Article 131(A) and (D). Section 5 reads in pertinent part:
Joint custody decree and implementation order
A(1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2) The implementation order shall allocate the time periods during which each *90 parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
All of the provisions of Act 261 were to be effective January 1, 1994. However, the 1993 legislature also enacted Act 905, which by its preamble, declared that it was amending and reenacting Civil Code Article 131(D). Section 1 of Act 905 provided:
D. For purposes of this Article, "joint custody" shall mean the parents shall, to the extent feasible, share the physical custody of children of the marriage. To the extent it is feasible, physical custody of the children shall be shared equally. In making an award of physical custody, the court shall consider, among other things, the factors enumerated in Paragraph ©(2). Joint custody shall also mean that the parents shall enjoy the natural cotutorship of such children in accordance with Article 250, subject to the plan of implementation effected pursuant to Paragraph A of this Article. Physical care and custody shall be shared by the parents in such a way as to assure a child of frequent and continuing contact with both parents. An award of joint custody obligates the parties to exchange information concerning the health, education, and welfare of the minor child; and, unless allocated, apportioned, or decreed, the parents or parties shall confer with one another in the exercise of decision-making rights, responsibilities, and authority. (emphasis added)
Act 905 became effective August 15, 1993, and changed paragraph D of Civil Code Article 131 by adding the sentence, "To the extent it is feasible, physical custody of the children shall be shared equally."
Pursuant to the powers conferred upon it by Louisiana Revised Statute 24:201 et seq., the Louisiana Law Institute designated the language of Louisiana Revised Statute 9:335(A)(2), (enacted by Section 5 of Act 261) as Section 335(A)(2)(a) and added the sentence, ("To the extent it is feasible, physical custody of the children shall be shared equally,") from Act 905, Section 1 and designated that sentence as Section 335(A)(2)(b) to the newly enacted Louisiana Revised Statute 9:335. That statute entitled "Joint custody decree and implementation order," currently provides, in part:
A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
(b) To the extent it is feasible, physical custody of the children shall be shared equally."
The Bynog petition was filed after January 1, 1994. The trial judge was obligated to consider the "equal physical custody to the extent feasible" mandate. He was not free to disregard it after awarding joint custody.
The trial judge's reason for tipping the "best interest" scale in favor of the father retaining domiciliary custody of the children evidences his expectation that the paternal grandmother will continue "babysitting" them. We have said the "jurisprudence of this state in enforcing and interpreting the child custody articles has always recognized the paramount importance and uniqueness in the natural parent relationship." Creed v. Creed, 647 So.2d 1362 (La.App. 3 Cir.1994). We do not wish to suggest the contributions made by Darrell's mother in caring for the children while the couple worked is unimportant. Her genuine devotion to them and pledge to continue caring for them deserve applause. However, we also recognized that:
"The best interests of the child must be cautiously weighed against the rights of the biological parent, which it is also necessary for the court to consider. While it certainly could be in the interest of many children to be reared in homes other than that of their parents, that test standing alone cannot be used to deprive the parents of custody of their child." Lewis v. Taylor, 554 So.2d 158, 161 (La.App. 2 Cir. 1989), writ denied 554 So.2d 1237 (1990); *91 Creed v. Creed, 647 So.2d 1362 (La.App. 3 Cir.1994).
Parents who have not been judged unfit or otherwise unable to attend the needs of their offspring have a statutorily protected right to play a significant role in nurturing and caring for them. Mentioning Sherry failed to articulate "firm plans" for the children's care in Arkansas, the trial judge later acknowledged her parents also loved the children and offered to care for them as she struggles to relocate and further her educational training.[3] In final analysis, he found both parents loving and capable of caring for the children. Sherry's decision to leave Darrell, "clandestinely and secretly," and move to Arkansas without "ascribing any reason for doing so," as the trial judge pointed out with some discontent, is not a matter we are called to address nor a factor he should have considered. No more so should we blame Sherry for her behavior than we should fault Darrell for insisting she leave "his house" on the night the parties separated. We aim in this child custody case not to regulate the couple's marital relationship or chastise either for deciding to end it. The objective in custody cases is to arrive at a result that serves the children's best interest. Hensgens v. Hensgens, 94-1200 (La.App. 3 Cir. 3/15/95), 653 So.2d 48; Merritt v. Merritt, 550 So.2d 882 (La.App. 2 Cir.1989); Cleeton v. Cleeton, 383 So.2d 1231 (La.1979); Stephenson v. Stephenson, 404 So.2d 963 (La. 1981).
Neither party complains on appeal the trial judge erred in awarding them joint custody of the children. His decision to do so was factually and legally sound. His decision, however, to severely restrict and impose a territorial limit on Sherry's right to visit her children was erroneous. The "joint custody" award rendered by him when pierced is nothing more than a "sole custody" decree in Darrell's favor. We cannot legally affirm it without modification. Accordingly, as mandated by La.R.S. 9:335(A)(2)(b), we amend the trial court judgment and grant equal custody of the children to both parties for six month intervals with the party who does not have domiciliary custody enjoying visitation every other weekend.
Because Sherry Bynog has enjoyed less contact with the children since these proceedings began than Darrell, her six month period will begin on the date this decision is rendered. After six month's elapse, she shall relinquish the domiciliary care of the children to Darrell Bynog for six months, and so on, until the children begin school. Sherry Bynog shall be allowed to visit the children every other weekend when they are in the domiciliary care of Darrell Bynog without any territorial restriction.
We affirm that portion of the trial court's judgment which allows the parents to visit with the children on alternating major holidays, including New Year's, Easter, July Fourth, Labor Day, Thanksgiving, Memorial Day, and Christmas. Sherry shall have visitation privileges with the children on "Mother's Day" and Darrell shall share the same on "Father Day."
Further, the trial judge acknowledges, and the record convinces us, Sherry primarily cared for the daily physical needs of the children. Darrell, on the other hand, normally left this task either to Sherry or his mother. We have little doubt Darrell's mother will make good her offer to continue "babysitting" and assisting him in caring for the children; but, the law does not demand nor expect her to raise them. This responsibility first must be rejected by the biological parents. Sherry has cared for them prior to and after birth; and, all agree, she has not shirked her responsibility.[4] When the children *92 begin school they will demand greater attention. At that time, hopefully, the parties will understand their parental and legal duties require them first to consider the best interest of the children and they will agree to modify the present day plan to accommodate the children's school schedules.
Finally, Sherry is entitled to an award directing Darrell to pay child support for the maintenance of the children during the periods they are in her care and custody; and, such other times as the financial circumstances of the parties may warrant. Therefore, we remand the case and instruct the trial judge to conduct a hearing forthwith to determine the amount of support Darrell Bynog shall pay to Sherry Bynog for the benefit of the children consistent with applicable guidelines and jurisprudence.

DECREE
For the foregoing reasons, we modify and amend the trial court's custody decree to award "joint custody" to the parents in the manner herein expressed; and, remand the case for the trial judge to fix and enter an award of child support to be paid by Darrell Bynog to Sherry Bynog for the maintenance of his minor children in accordance with this opinion. Darrell Bynog shall pay the cost of this appeal.
AFFIRMED IN PART, MODIFIED AND AMENDED IN PART, AND REMANDED FOR PREFERENTIAL FIXING AND HEARING.
SAUNDERS, J., concurs with reasons.
SAUNDERS, Judge, concurring.
I find the best interest of the children would be served by awarding full and permanent domiciliary custody of them to their mother. Because the majority is unwilling to modify the lower court's judgment to the extent suggested, I concur in the opinion granting the relief closest to the result I believe appropriate in this case.
NOTES
[1] Louisiana Civil Code article 134 provides the court shall consider all relevant factors in determining the best interest of the child including those listed.
[2] Louisiana Civil Code Article 132 reads:

Art. 132. Award of custody to parents
If the parents agree who is to have custody, the court shall award custody in accordance with their agreement unless the best interest of the child requires a different award.
In the absence of agreement, or if the agreement is not in the best interest of the child, the court shall award custody to the parents jointly; however, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the court shall award custody to that parent.
Acts 1993, No. 261 § 1, eff. Jan. 1, 1994. (Emphasis added)
[3] Sherry explained her plans were not firm on the date she testified because she did not leave the jurisdiction of the Court and travel to Arkansas deciding the better option was to visit her children daily in this State and await the scheduled hearing date. She knew her intent to attend nursing school and reside with her parents who both testified they made preparations to provide housing and care for Sherry and the children as long as required. Although Sherry's brother, on probation for committing burglary, also resides occasionally at her parent's home in Arkansas, no evidence was presented which even suggested his presence in the home threatened the well-being of the children.
[4] Darrell has fathered a son, born during his first marriage. Although Darrell's mother admitted knowing where this child presently resides, Darrell maintained he had not attempted to contact him or pay court ordered support for the past five years because he did not know the where abouts of the child and his ex-wife.