686 So.2d 67 (1996)
Tommy Lee EVANS, PlaintiffAppellee,
v.
Donna Coody LUNGRIN, DefendantAppellant.
No. 96-576.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1996.
Rehearing Denied January 28, 1997.
*68 C. Kerry Anderson, De Ridder, for Tommy Lee Evans.
Richard V. Burnes, E. Grey Talley, Alexandria, for Donna Coody.
Before DOUCET, C.J., and COOKS, and SULLIVAN, JJ.
SULLIVAN, Judge.
Donna Coody Lungrin, now a resident of Fort Lewis, Washington, appeals a modification of a joint custody plan that removes her as the domiciliary parent of her nineteen-month-old daughter and that orders equal sharing of physical custody with the child's biological father, who lives in Dubach, Louisiana. For the following reasons, we affirm as amended herein.

FACTS
On April 27, 1994, Donna Coody gave birth to a daughter, Lindsay Jean Coody. On December 26, 1994, Donna married Bobby Lungrin; she subsequently moved to Alabama with her new husband and baby. Court-ordered paternity testing, however, later established that Lindsay's biological father was another man, Tommy Lee Evans. This litigation is the result of Tommy's efforts to establish a relationship with his child.
On June 30, 1994, after he executed an act of formal acknowledgment, Tommy filed a rule for visitation with Lindsay. Donna responded with a motion to order fertility testing, alleging that Tommy had represented he was incapable of fathering a child. The parties subsequently agreed to undergo blood testing to determine Lindsay's paternity. They stipulated that Tommy could exercise visitation with Lindsay for two hours every other Saturday pending the outcome of the test.
After Tommy was found to be Lindsay's father, the parties stipulated, on April 11, *69 1995, to joint custody, with Donna as the domiciliary parent and with Tommy enjoying visitation one week per month for nine months and alternating weeks in June, July, and August. The stipulation also provided that Tommy pay $150.00 per month in child support and that each party give the other sixty days notice prior to any change in residence.
On August 31, 1995, Tommy filed a rule seeking sole custody of Lindsay, based upon Donna's impending move to the state of Washington. Tommy also alleged that Donna refused to cooperate with the visitation schedule, interfered with his court-ordered telephone contact with the child, and was unwilling to facilitate and encourage his relationship with the child. Donna answered Tommy's rule, denying many of his allegations and praying that the existing joint custody agreement be maintained, with changes only in Tommy's visitation schedule.
Trial of the matter was held on December 4, 1995. Tommy testified that he is incapable of working because of a back injury, and, therefore, he is able to care for Lindsay full time. (Donna has not alleged, and the record does not suggest, that Tommy's disability interferes with his care of the child.) When the child is with Tommy, he feeds her, bathes her, and puts her to sleep himself. Several neighbors confirmed that Tommy always has the child with him, never leaving her with babysitters. Tommy asked the court to award him equal sharing of the physical custody of Lindsay.
Tommy lives in a mobile home with his mother, who is in ill health, but who is capable of assisting with Lindsay's care. Tommy's sister, Patricia Johnston, testified that she visits her brother at least twice a month. She has observed that Lindsay is happy with her father, recognizes him and calls him "Daddy," and often plays with other neighborhood children. Several neighbors confirmed that Lindsay has many playmates in the area, that they have observed Tommy and Lindsay in such activities as going to the zoo or riding bicycles, and that Tommy's home is clean and well-kept. One neighbor testified that she has permitted Tommy to babysit her own eight-year-old child.
Donna moved to Washington because her new husband, Bobby, was transferred to that state. (Bobby is a sergeant in the U.S. Army; he also claims Lindsay as a dependent, entitling her to the use of army medical facilities.) The couple lives in a two bedroom home with Lindsay and have visitation with Bobby's seven-year-old son from a previous marriage. Donna has also raised another child who is now twenty-two years old. Donna, too, can care for Lindsay full time because she does not work outside the home. At trial, Donna's relatives and friends attested to her superior parenting skills and described her as an "immaculate housekeeper."
At trial, Donna acknowledged that the stipulated visitation schedule is now unworkable. However, she expressed concern about extended visitation periods for a child of Lindsay's age. Donna stated that after the seven-day visits with Tommy, Lindsay would cling excessively to her, had temper tantrums, and was difficult to put to sleep for about two days. Further, Lindsay has not willingly gone with Tommy in eight out of ten of their exchanges. Lindsay's aberrant behavior after these visits was confirmed by Donna's aunt and a psychotherapist who evaluated Lindsay at Donna's request.
Donna proposed that Lindsay have four, twelve-day visits a year with Tommy, with Donna keeping the child every fourth night. (Donna would remain in Louisiana, presumably at her mother's home in Deridder.) The length of these visits would be extended each year until Lindsay reached kindergarten age, when Tommy could have full summer visitation.
Nancy DeVaney, a licensed custody evaluator in Alabama, testified by deposition that a three-month alternating split between parents is unacceptable for a child Lindsay's age, when the parents do not live within distances that permit frequent contact with the child. Her opinion was based upon literature and professional journals as well as four visits with Lindsay and her mother.
After taking the matter under advisement, the trial court found that equal sharing of physical custody was in Lindsay's best interest during her preschool years. The trial *70 court ordered that joint custody be continued, but with neither parent designated as the domiciliary parent. The court ordered equal custody periods in blocks of four months with Tommy's visitation to commence in April of 1996. Additionally, the court ordered visitation in favor of Lindsay's maternal grandparents one weekend each month that the child is with her father.
Donna appeals, assigning seven errors.

OPINION
We first consider Donna's fifth assignment of error because it will determine what standard of review applies in this case. Donna contends that we should review the trial court's findings de novo because the trial court judgment has been interdicted by legal error.
The trial court's ruling refers to former La.Civ.Code art. 131, which had been repealed effective January 1, 1994. Tommy's initial rule for visitation was filed after this date. Hence, the trial court judgment is based upon repealed legislation.
Former Article 131(A) and (C) contained a presumption in favor of joint custody that could be rebutted only after consideration of evidence introduced with respect to all eleven factors of former Article 131(C)(1). Now, Article 131 states only that the court shall award custody in accordance with the best interest of the child. La.Civ.Code art. 132 provides that in the absence of an agreement or if an agreement is not in the best interest of the child, the court shall award custody to the parents jointly, unless custody in one parent is shown by clear and convincing evidence to serve the best interest of the child.
The eleven factors of former Article 131(C)(1) have been reproduced in La.Civ. Code art. 134; however, their import has changed. Comment (a). Whereas formerly all of the listed factors were considered by the court in determining whether the presumption of joint custody had been rebutted, the factors are now provided as a guide in determining the best interest of the child. Hawthorne v. Hawthorne, 96-89 (La.App. 3 Cir. 5/22/96); 676 So.2d 619, writs denied, 96-1650 (La.10/25/96); 681 So.2d 365. Under the new legislation, the list of factors is non-exclusive, and the determination as to the weight given each factor is left to the trial judge. Comment (b). Additionally, revised Article 134 includes a twelfth factor not found in former Article 131: "The responsibility for the care and rearing of the child previously exercised by each party."
Former Article 131(D) also provided, in part: "To the extent it is feasible, physical custody of the children shall be shared equally." This provision is now found in La.R.S. 9:335(A)(2)(b) which reads: "To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally." (Emphasis added.) Although the amendment adding the italicized language did not become effective until 1995, courts had always considered the child's best interest in awarding a "fifty-fifty" sharing before that criteria was added to the statute. Darnall v. Darnall, 95-169 (La. App. 3 Cir. 5/31/95); 657 So.2d 387.
Although the trial court cited the repealed civil code provisions, it appears, perhaps inadvertently, that the court applied the law in accordance with the revised articles. The court properly awarded joint custody, as neither party proved by clear and convincing evidence that sole custody was in the best interest of the child. The court considered many of the enumerated factors in determining the best interest of the child, not in whether the presumption in favor of joint custody had been rebutted. The court did consider Donna's role as the child's primary caretaker, even though that factor was not listed in the article cited by the court. Finally, the court did consider the child's best interest in awarding equal sharing of physical custody, as discussed more fully below. For these reasons, we conclude that the manifest error standard governs our review.
In her first and second assignments of error, Donna contends that Tommy did not meet the requisite showing to modify a consent judgment of custody; i.e., (1) that a change in circumstances materially affecting the welfare of the child had occurred since the original decree and (2) that the proposed modification was in the best interest of the *71 child. Hensgens v. Hensgens, 94-1200 (La. App. 3 Cir. 3/15/95); 653 So.2d 48, writ denied, 95-1488 (La.9/22/95); 660 So.2d 478.
Donna argues that her move from Alabama to Washington is not a change in circumstances that materially affects Lindsay. However, she acknowledges that the move renders the current consent arrangement unworkable. In moving to Washington, Lindsay will have less contact with her father and with her extended family members, including Donna's family, who are located entirely in Louisiana.
We find two cases cited by Donna in this assignment are clearly distinguishable. In Smith v. Smith, 615 So.2d 926 (La.App. 1 Cir.), writ denied, 617 So.2d 916 (La.1993), the mother was permitted to take the children from Louisiana to Indiana, where many of the children's relatives lived. In Lachney v. Lachney, 446 So.2d 923 (La.App. 3 Cir.), writ denied, 450 So.2d 964 (La.1984), the court refused to allow the removal of a seven-year-old child from the stable environment provided by her father and paternal grandparents in Louisiana. In the instant case, however, the child's living arrangements have not been as stable, with the child having moved from Louisiana to Alabama to Washington in less than two years. The move to Washington would further reduce what little contact the child has had with her father and extended family.
Donna also argues that Tommy failed to prove that his proposed change of "fifty-fifty" sharing was in Lindsay's best interest. In particular, in her sixth assignment, she argues that the trial court failed to consider the distance between the parties in ordering an arrangement that "shuttles" the child between states.
In written reasons, the trial court stated that it would have little difficulty in naming Tommy as the domiciliary parent. The court considered Tommy's proven ability to care for the child, his sincere desire to be a part of her life, and that Tommy is available as a full-time parent. The court also found that Donna is equally qualified to care for Lindsay and has, in fact, been her primary care giver. However, the court considered that Donna's role as the primary care giver resulted in part from her initial reluctance to foster a relationship with Lindsay and her father. The court specifically found that limited contact with such a caring father was not in the child's best interest and that the custody arrangement proposed by Tommy best furthers that relationship.
The trial court's findings as to the parties' parenting abilities is supported by the record. Both parents are clearly capable of providing Lindsay with a loving, safe home. Although Donna has been Lindsay's primary caretaker, Tommy has also provided significant care, tending to her needs entirely by himself when she is with him. The great distance between the parties is somewhat tempered by testimony from Donna, Tommy, and Bobby that they are willing to bear the responsibility and cost of transportation. We also note that Donna's proposed plan would result in more travel time for the child and greater expense for all.
La.R.S. 9:335(A)(2)(b) provides that parents should equally share physical custody of their children where it is feasible and in the best interest of the children. In the instant case, such an arrangement is feasible, despite the distance separating the two households. Lindsay is not yet of school age, and the parties have apparently handled transportation problems well. The trial court found that the arrangement was in Lindsay's best interest based upon her father's parenting skills and the child's need to establish a relationship with her father before she begins school (when this opportunity would possibly be lost). We find no error in the trial court's ruling.
Donna argues in her third assignment of error that the trial court improperly attempted to balance the rights of the parents rather than to weigh the best interests of the child. We disagree. In Remson v. Remson, 95-1951, p. 4 (La.App. 1 Cir. 4/4/96); 672 So.2d 409, 412, the court stated:
Previously, the courts consistently held that joint custody did not mean a 50-50 sharing of time. Brazan v. Brazan, 93-2369 (La.App. 1 Cir. 6/24/94), 638 So.2d 1176. However, the legislative amendments indicate a clear intent to foster an *72 equal sharing of custody when it is feasible and in the best interests of the children. We believe that the best interest of the child remains the paramount concern in making custody determinations; however, that interest must be balanced with a parent's right to equally share the physical custody of the child where feasible. See Bynog v. Bynog, 95-173 (La.App. 3d Cir. 7/26/95), 663 So.2d 86.
In her fourth assignment, Donna contends that the trial court improperly used its decision to manipulate her behavior. The trial court stated in its ruling that the decision provided an opportunity for Donna to demonstrate her willingness to foster a relationship between the child and her father and to test the mother's "verbal expressions of cooperation against her actions."
An award of custody is not a tool to regulate human behavior. Interference with visitation alone is not a sufficient reason to change custody absent a showing of a detrimental effect on the child. Smith, 615 So.2d 926. It is unfortunate that the trial court included the above language in its reasons. However, we cannot conclude that the trial court placed undue weight on Donna's past uncooperative attitude. The trial court also noted that Donna now understands the rights of the father to the child. Further, the trial court stated that the primary factors in reaching its decision included the father's ability to parent successfully, the distance involved, the age of the child, the location of the extended family in Louisiana, as well as the mother's reluctance to foster a relationship between the child and her father. The trial court's reasons in their entirety demonstrate an obvious concern for the welfare of the child. We, therefore, find no merit to Donna's third and fourth assignments.
In her final assignment, Donna argues that the trial court erred in failing to view her position as Lindsay's primary caretaker as "tipping the scales" in favor of her continued status as domiciliary parent. We agree.
The goal of the trial court's plan is to insure that Lindsay establish a relationship with her father before she begins school. The great advantage of the plan is that Lindsay will at all times be in the care of one of her natural parents, without the need for babysitters or other child care arrangements. Two significant drawbacks to the plan, however, are its lack of stability for the child and the distance between the parties. We find that maintaining Donna as the domiciliary parent will add needed continuity in the child's life. Already, Donna and Tommy have developed disagreements as to Lindsay's medical needs. Donna has provided the majority of Lindsay's care in the past and is the more experienced of the two parents, having raised another child.
We further find that, for the plan to work, the child must be granted additional contact with her mother during the father's custody periods. We have found only one case of equal physical custody where both parents did not live in Louisiana. In Bynog, 663 So.2d 86, we approved a six month sharing arrangement of two preschool children whose parents lived in Louisiana and Arkansas. The distance was such that each parent could have visitation on alternating weekends while the children were in the other parent's physical custody.
The trial court ruling in the instant case permits only telephone contact for one hour on Sundays. We find that this is too restrictive, in light of Donna's testimony that she can remain in Louisiana for some of the time that the child is with Tommy. We, therefore, amend the trial court judgment to provide for reasonable visitation in favor of Donna during Tommy's custody time, as permitted by her travel schedule. This visitation is in addition to the one weekend per month visits with the child's maternal grandparents.

DECREE
For the above reasons, the judgment of the trial court is amended to reinstate Donna Coody Lungrin as the child's domiciliary parent and to provide for reasonable visitation, to be determined by the mother's travel schedule, in favor of the mother during the father's custody periods. In all other respects, the trial court judgment is affirmed. *73 Costs of this appeal are assessed equally to both parties.
AFFIRMED AS AMENDED.