|,YELVERTON, J.
This is an appeal of the trial court’s ruling designating the plaintiff, Tommy Lee Evans, as the domiciliary parent of his five-year-old daughter, Lindsey. Appellant presents thirteen assignments of error. We affirm.
STATEMENT OF THE CASE
Lindsey Jean Coody was born out of wedlock on April 27, 1994. Her parents, Tommy Lee Evans (Mr. Evans) and Donna Coody Lungrin (Mrs. Lungrin) never married. Mr. Evans established paternity of Lindsey through blood tests and attempted to establish a relationship with the child. He paid child support and sought regular visitation. Thereafter, based on a stipulation, the trial judge ordered joint custody, named Mrs. Lungrin the domiciliary parent, and established a visitation schedule.
On December 26, 1994, Mrs. Lungrin married Todd Lungrin, an military policeman in the armed forces. The couple moved to Alabama ahd then to Washington State pursuant to military orders. Based upon a material change of circumstances, Mr. Evans filed a rule for modification of custody which was litigated. The trial court found that a material change of cir-' cumstances had occurred, vacated the pri- or stipulated designation of domiciliary parent, and established a co-parenting arrangement. The trial court set an equal visitation schedule between the parents providing each with equal time with the child on a four-month- rotating schedule, with provisions for contact and visitation during these periods for the non-custodial parent. The trial court did not designate a domiciliary parent.
1 ¡Mrs. Lungrin appealed the ruling, and this circuit affirmed the trial court, but reinstated Mrs. Lungrin as the domiciliary parent. We modified the visitation to provide less visitation with the father, Mr. Evans. Evans v. Lungrin, 96-576 (La. App. 3 Cir. 12/11/96); 686 So.2d 67.
The supreme court granted writs and rendered a judgment affirming the trial court’s award of legal custody. The supreme court vacated the appellate court’s designation of Mrs. Lungrin as domiciliary parent and reversed the ruling of alternating split physical custody. It then remanded the case to the trial court for the rendering of a joint custody implementation order, the appointment of and evaluation by an independent expert, and the designation of a domiciliary parent, if appropriate. The trial court also ordered an implementation order of visitation for the non-custodial parent and a psychological evaluation of both family units involved to provide the trial court with the necessary data for these determinations. Evans v. *258 Lungrin, 97-0541, 97-0577 (La.2/6/98); 708 So.2d 731.
After the remand, the trial court appointed Dr. John Simoneaux as the expert for the evaluation. After Dr. Simoneaux made his evaluation and recommendations, two separate hearings were held in which both sides presented witnesses and other evidence. The trial court agreed with the recommendation of the independent psychological evaluator and designated Mr. Evans as the domiciliary parent and implemented an order of visitation. The trial court also ordered that the name “Evans” be added on Lindsey’s birth certificate to reflect her father’s last name. Mrs. Lung-rin presently appeals these rulings.
J^OPINION
It is well settled that the findings of fact of a trial court or jury will not be disturbed on review absent a finding of clear or manifest error. Id.
Even though the appellant, Mrs. Lungrin, stated thirteen assignments of error, there are really only two basic arguments: (1) did the trial court err in designating Mr. Evans as the domiciliary parent, and (2) was it error for the trial court to order that the father’s last name be added to Lindsey’s name on the birth certificate?
During the almost three years between the first considered decree (January 1996) and the hearings on remand (ending October 4, 1998), one factual change was that Mrs. Lungrin returned to live in Louisiana. This and all other intervening factual developments were taken into consideration by the trial court when it decided this matter on remand.
Mrs. Lungrin contends that Mr. Evans failed to demonstrate that his designation as domiciliary parent would be in the best interest of the child. In its reasons for judgment, the trial court found, and discussed at length, evidence supporting the finding that it was in the best interest of the child that Mr. Evans should be designated the domiciliary parent. The trial court discussed all the relevant factors provided in La.Civ.Code art. 134. We quote from its reasons for judgment:
There is no question that both parents love this child intensely and have bonded well with the child. Both parties have the capacity to provide the child with food, clothing, and other material needs. Neither party has any particular moral deficits which could foreseeably hinder the moral development of the child. The physical health of each parent is such that there are no issues of concern for the Court in this area as well; indeed Mr. Evans’ limited physical disability works to his advantage. It may prevent his working full time; however, it does not limit him in any way in his care of the child and makes him readily available to Lattend to the child as a full time parent, unlike most fathers who find themselves out of the home of necessity to provide support for their family.
The age of the child minimizes the significance of factors eight and nine, in that the child is pre-school and too young to express a preference uninfluenced by adult agendas.
Mr. Evans strengths manifest themselves in permanence and stability of his family unit, his willingness to foster relations with the maternal side of the family, and his disposition to place the child’s needs first.
He has remained throughout these proceedings at his family home site in rural north Louisiana near Dubach. He has upgraded the quality and size of his residence, but it remains on the same site. On the other hand Mrs. Lungrin has lived in Louisiana, Alabama, Washington State, and is now back in Louisiana in the four short years since the child’s birth. Granted these moves have been mandated by military orders, but they are and will probably remain a continued fact of her existence. She, as is Mr. Evans, will be living as a single parent for the coming year due to an unaccompanied assignment of her hus *259 band to Korea. She has expressed the belief that after this tour of duty he will be assigned to Ft. Polk, Louisiana for several years or will perhaps get out of the military and work in this area of Louisiana. However, at trial Mr. Lung-rin expressed no such expectation and indeed expressed the preference to settle in the western part of the United States after leaving the Army. Such issues are clearly unresolved between these spouses and portend future disagreement or conflict, if Mrs. Lungrin desires to remain in southwest Louisiana where her extended family lives. With the child being domiciled with Mr. Ev-. ans that extended maternal family will clearly benefit from more frequent visitation with the child, as they have in the past when the child has been visiting with Mr. Evans. He has convincingly asserted in his testimony that he recognizes the significance of these relationships with the child’s extended maternal family. The Court believes that he will continue to promote them, as he has in the past.
Along these same lines, the Court believes, as does Dr. Simoneaux, that Mr. Evans better understands the critical importance of the child maintaining a positive relationship with both parents. Further, it is believed that Mr. Evans will more genuinely strive to achieve this goal than Mrs. Lungrin.
|sMrs. Lungrin maintains that Mr. Evan’s family unit was neither stable nor permanent, because he cared for his elderly mother who had extensive health problems before her death. We find this argument to be without merit. It was quite commendable of Mr. Evans to make the sacrifices that he endured in providing and caring for his mother during the last years of her life. Mr. Evan’s loyalty to his mother showed Lindsey an example of a father devoted to the family unit.
There is also the argument that it was error for the court to find that Mr. Evans’ strengths manifest themselves in his willingness to foster relations with the maternal side of the family, when he denied visitations to Donna and her family members on several occasions. We find this argument to be without merit. The record is replete with circumstances in which Mr. Evans on his own initiative made arrangements for Mrs. Lungrin’s family to spend time with Lindsey. It was only when Mrs. Lungrin’s family began to abuse his generosity that Mr. Evans required the maternal family to adhere to the original custody arrangements.
Mrs. Lungrin also argues that it was error for the trial court to conclude that she lacked willingness to foster and encourage a close and continuing relationship between Mr. Evans and Lindsey in not actively inviting Mr. Evans to visit Lindsey in Washington. This argument is without merit. The trial court opined that Mr. Evans better understood the importance of the child maintaining a positive relationship with both parents. The trial court used the Washington instance as only one example of many where Mrs. Lungrin did not foster the relationship between Mr. Evans and Lindsey. There were other circumstances such as Mrs. Lungrin’s behavior during exchanges and her disallowing overnight visits with the father when he went | ñto Washington to see the child. We can find no abuse of discretion with the trial court’s conclusion that this conduct was detrimental to Lindsey and her relationship with her father.
Mrs. Lungrin maintains that it was error for the trial court to compare Mr. Evans’ educational background to ■ Mrs. Lungrin’s father’s educational background, concluding that Mr. Evans had more education than Mrs. Lungrin’s father, especially considering that Mrs. Lungrin’s father was educated decades before Tommy. Mrs. Lungrin presented no evidence that Mr. Evans’ lack of education would affect his ability to provide and encourage Lindsey’s educational needs. We find Mrs. Lungrin’s argument without merit.
*260 Mrs. Lungrin asserts that it was error for the trial court to limit her visitation with Lindsey to 71.5 days per year. We find the visitation plan to be reasonable, and it serves Lindsey’s best interest.
Finally, Mrs. Lungrin complains that it was error for the trial court to order that Lindsey’s birth certificate be amended to reflect Mr. Evans’ paternity. We agree. At birth, Lindsey’s surname was her mother’s maiden name on her birth certificate in accordance with La.R.S. 40:S4(B)(l)(a)(vi) of the “Vital Statistics Laws.” “Any change in the surname of a child ... shall be by court order as provided for in R.S. 13:4751 through 4755 [the “Change of Name” statute] or as otherwise provided in this Chapter or by rules promulgated thereunder.” La.R.S. 40:34(B)(l)(a)(v). The change of name proceeding shall be conducted contradictorily with the State. La.R.S. 13:4752. Although Mr. Evans is the natural father and has been judicially declared the father in a filiation proceeding, the proper procedure has not been employed to |7change Lindsey’s name, and this part of the judgment must be reversed. Morace v. Waller, 99-1191 (La.App. 3 Cir. 12/8/99); 755 So.2d 905; Fielding v. Andrews, 97-2845 (La.App. 4 Cir. 5/27/98); 715 So.2d 66.
CONCLUSION
For the reasons set forth above, the judgment of the trial court is affirmed in part and reversed in part. Costs of this appeal will be divided equally.
AFFIRMED IN PART; REVERSED IN PART.