834 So.2d 1245 (2002)
Sean Mitchell AUCOIN
v.
Kara Thomas AUCOIN.
No. 02-0756.
Court of Appeal of Louisiana, Third Circuit.
December 30, 2002.
*1246 Allen Bruce Rozas, Ville Platte, LA, for Kara Thomas Aucoin.
Kathy F. Meyers, Ville Platte, LA, for Sean Mitchell Aucoin.
Court composed of JOHN D. SAUNDERS, OSWALD A. DECUIR, MARC T. AMY, MICHAEL G. SULLIVAN, and ELIZABETH A. PICKETT, Judges.
SAUNDERS, Judge.
The defendant, Kara Thomas Aucoin, appeals the judgment of the trial court and argues that the trial court committed manifest error in: 1) transferring the domiciliary custody of Nicholas Jordan Aucoin and Morgan Elizabeth Aucoin to their father Sean Mitchell Aucoin, and 2) restricting her visitation with the children to within three miles of the grandparents' home while always in the presence of at least one grandparent. For the following reasons, we affirm the trial court's judgment in part and reverse in part.

PROCEDURAL HISTORY
Sean Mitchell Aucoin, the plaintiff, and Kara Thomas Aucoin, the defendant, were married in January of 1994, in Evangeline Parish and later separated in July of 1998. Sean and Kara have two minor children, Nicholas Jordan Aucoin, born on May 31, 1992, and Morgan Elizabeth Aucoin, born in August of 1995. On August 10, 1998, Sean filed a petition for divorce. On November 4, 1998, a consent judgment was entered granting the parties joint custody and naming Kara as the domiciliary parent. Sean was granted reasonable visitation rights.
Sean filed a Petition for Judgment of Divorce on February 25, 1999. A Judgment of Divorce was rendered on March 12, 1999. On May 26, 2001, Sean married Misty Aucoin, a stay at home mother who has three children from a previous marriage. On January 14, 2002, Sean filed a Rule for Temporary and Permanent Custody. Accordingly, a Temporary Restraining *1247 Order was issued granting him custody of the children until further proceedings on the matter. After a three day hearing on the merits in March and April of 2002, the trial court ruled in favor of the father, ordering that Sean be designated as the domiciliary parent of both children and granting Kara supervised visitation rights.
Kara was granted visitation with the children every other weekend, from Friday afternoon at 5:00 p.m. to Sunday afternoon at 5:00 p.m. In addition, she has visitation with the children every Wednesday night from 5:00 p.m. until the following morning. The parents also received alternating holidays with the children. The first year the children would spend Thanksgiving with Sean, Christmas with Kara, New Year's with Sean, and Easter with Kara. Holiday visitations begin at 5:00 p.m. on the eve of the holiday, and last until 5:00 p.m. on the day of the holiday.
All visitation by Kara was to be supervised, occurring in the home of the maternal grandparents, Brenda and Tommy Thomas, and was to proceed under their supervision at all times. Kara was required to be present at their home at the time the children are dropped off for visitation. If she was not at her parents' home during the visitation, Kara's visitation was forfeited. The trial court further dictated that Kara could not travel outside of a three mile radius of her parents' house, either by herself, or with the children, during her periods of visitation.
Following the rendering of the Judgment on the Rule, Kara filed a Motion for New Trial which was denied by the trial court.

FACTS
Sean and Kara entered into a consent judgment agreeing that they would share joint custody of the two minor children. Kara was designated as the domiciliary parent and Sean was granted reasonable visitation rights. At some point in 1999 Kara began living with Bobby Lee Crenshaw, a convicted felon who, on or about December 12, 2001, was arrested on a charge of selling drugs. Mr. Crenshaw is currently serving a prison sentence for this crime.
At the time of the arrest Sean had the children for his regular visitation. He received a phone call from Kara telling him not to return the children to her as scheduled because she was currently unable to care for them. Sean testified that during the phone call from Kara she was nearly hysterical and stated she was about to have a nervous breakdown and wanted to go to rehab. Sean and his wife maintained the children in their care and custody for over fourteen days, during which time they were not contacted by Kara and had no knowledge of her whereabouts or how to contact her in case of emergency.
It was not until Christmas Eve that Kara contacted the children and visited with them for approximately two hours. Sometime in early January, after Kara had taken the children back from Sean, she was contacted by an individual claiming to be a friend of Mr. Crenshaw. This man asked to set up a drug lab in Kara's home to manufacture methamphetamine. According to the testimony of State Trooper Brooks David, sometime around January 7, 2002, Kara came to the state police claiming that she had information on a man making methamphetamine in Pine Prairie. At that time Kara indicated that she wanted to help catch the subject because she "wanted to help get drugs off the streets" and also wanted to try to help get a deal for her boyfriend, Mr. Crenshaw, who was in prison at that time.
*1248 During that initial discussion with the state police, they informed Kara that they wanted her to contact this man about the possibility of setting up the lab. They asked her to contact them on Wednesday, January 9. The testimony of Trooper David is that they specifically informed Kara that she was to contact them before taking any action towards the alleged drug manufacturer. They received no further contact from her or about her until Saturday, January 12, 2002. They received a call at around 9:00 p.m. or 10:00 p.m. from a woman claiming to be Kara's friend. The woman told Trooper David that the man was at Kara's home and had already set up the drug lab. At that time the police were given an inventory of all the chemicals that were stored in the lab in Kara's home. Trooper David stated in testimony that since three quarters of their agents were out of town at the time, the state police were not able to take action on the drug lab until Monday morning. He informed the caller of this and told her that, because of the hazardous nature of the lab, if Kara felt she was in danger she needed to call the Sheriff's Department of Evangeline Parish or the Police Department of Pine Prairie and report the lab.
On the following morning, Sunday, January 13, Kara called Trooper David. Once again, he instructed her to call the Evangeline Parish Sheriff's Office or the Pine Prairie Police Department. It is unclear if Kara ever followed this instruction. On Monday morning, January 14, 2002, the state police obtained a warrant, went to Kara's residence, and seized the materials of the suspected methamphetamine lab. After discovering Kara's boyfriend had been arrested for selling drugs, and that a drug lab was seized from Kara's home, Sean took action to initiate a change of custody of Jordan and Morgan.

DISCUSSION
Kara presents the following issues on appeal: 1) whether the trial court commit manifest error in transferring domiciliary custody of Jordan Aucoin and Morgan Aucoin to Sean Aucoin, and 2) whether the trial court commit manifest error by restricting the visitation of the natural mother to within three miles of the maternal grandparents' home, and always in the presence of at least one maternal grandparent.
This court has clearly stated the standard of review for an appellate court in child custody matters. "The trial court is in a better position to evaluate the best interest of the child from observances of the parties and witnesses; thus, a trial court's determination in a child custody case is entitled to great weight on appeal and will not be disturbed unless there is a clear abuse of discretion." Hawthorne v. Hawthorne, 96-89 p. 12 (La.App 3 Cir.); 676 So.2d 619, 625, writ denied 96-1650 (La.10/25/96); 681 So.2d 365; Cooley v. Cooley, 94-251 (La.App. 3 Cir. 10/5/94), 643 So.2d 408; Mayeux v. Mayeux, 93-1603 (La.App. 3 Cir. 6/1/94); 640 So.2d 686.
It is well established in this circuit that the standard of review for a request for modification of a child custody consent agreement is less stringent than that required to modify a considered decree. "In cases where the original custody decree is a stipulated judgment, such as when the parties consent to a custodial arrangement, and no evidence of parental fitness is taken, the heavy burden of proof enunciated in Bergeron is inapplicable." Hensgens v. Hensgens, 94-1200 pp. 6-7 (La.App. 3 Cir.); 653 So.2d 48, 52, writ denied, 95-1488 (La.9/22/95), 660 So.2d 478, citing Bergeron v. Bergeron, 492 So.2d 1193 (La. 1986).
*1249 It is uncontested in this case that the original joint custody agreement between Sean and Kara was not a considered decree. "A considered decree is one which results from the reception by the court of evidence concerning parental fitness to exercise custody." Oliver v. Oliver, 95-1026 p. 12 (La.App. 3 Cir. 3/27/96); 671 So.2d 1081, 1089. In the present case, Sean and Kara mutually agreed to the joint custody arrangement and Sean's visitation schedule.
Because the custody agreement between Sean and Kara was not a considered decree by the court, Sean's burden in changing the present custody arrangement requires that he prove: 1) a change in circumstances affecting the welfare of the children had occurred since the original decree, and 2) the proposed modification is in the best interest of the children. See Weaver v. Weaver, 01-1656 (La.App. 3 Cir. 5/29/02); 824 So.2d 438; Hensgens, 653 So.2d at 52; Evans v. Lungrin, 96-576 (La.App. 3 Cir. 12/11/96); 686 So.2d 67, rev'd on other grounds, 97-0541 (La.2/6/98); 708 So.2d 731.
Under La.Civ.Code art. 131, decisions regarding custody of the children are made with the best interest of the child being paramount. Hensgens, 653 So.2d at 52. La.Civ.Code art. 134 provides a number of factors to be considered in making the best interest determination. In Hawthorne, 676 So.2d at 625, we held that these factors are merely suggested factors and the trial court is free to use other factors to make its determination. We stated that the court should consider the totality of the facts and circumstances in its analysis of the best interest of the child. Id. Additionally, the list is not exclusive and the trial court is to be given great discretion as to the weight of the relevant factors used. La.Civ.Code art. 134, Comment (b).
Material Change in Circumstance
Kara asserts that the trial court erred when it held that there had been a material change in circumstance since the implementation of the consent agreement. She claims that trial testimony established that the elements of Sean's complaint alleging the change in circumstance were proven not to exist. To support her contention, Kara argues that she is now employed, has transportation, is living with her parents, and has taken a drug test which showed no evidence of drug use. These factors alone do not establish that Sean failed to prove a material change in circumstance.
Beyond the elements of his original complaint, during the course of the hearing on this custody issue testimony was presented indicating that Kara has continued to maintain contact with Mr. Crenshaw after his arrest. In fact, she has made efforts on his behalf to lessen his sentence. Kara has not sufficiently shown that she has severed ties with Mr. Crenshaw. It is uncontested that she has visited Mr. Crenshaw since his arrest on more than one occasion. Moreover, Kara stated at the hearing that her motivation for contacting the police about the request to set up a drug lab in her home was to help Mr. Crenshaw and perhaps lessen his prison sentence.
We share the trial court's mistrust of Kara's assertions that she will have no further contact with Mr. Crenshaw. Apart from Kara's empty assurances to this fact, there has been no evidence presented to support Kara's claim in this regard. For the safety of the children, the court is unwilling to make the assumption, as Kara's counsel requested at the hearing, that Mr. Crenshaw is permanently out of Kara's life and does not pose a risk to the children.
*1250 Additionally, it is undisputed that a drug lab was seized from Kara's home early this year. This is the same home where, at the time, her two minor children lived. During his testimony at the hearing, Trooper David emphasized the extreme danger inherent to labs used to produce methamphetamine. He indicated that the lab had apparently been used to produce drugs and that drug residue had been found throughout the home requiring a clean up team to come in and clean the home.
Based on these facts, we find that the trial court did not commit manifest error in holding that Sean had proven a material change in circumstances since the implementation of consent agreement granting Kara domiciliary custody of the children.
Best Interest of the Children
The counselors treating Jordan indicated at trial that they have seen a marked improvement in the children since they have been residing with Sean. Kara argues that because the counselors could not make a definite recommendation at the hearing regarding the children's permanent placement, a change in the custody arrangement would not be in the children's best interest. In fact, the testimony at the hearing indicates that the counselors could not make a permanent placement recommendation because they had not performed any home studies. Without such studies, they did not have enough information to make such a recommendation.
Both counselors stressed the importance of a structured and stable environment for the well being of the children. While unable to make a permanent placement recommendation, the counselors did say that the children had done well while in Sean's custody and that they did not see any harm in leaving them there. Samuel Fusillier is the clinic manager and Chief of Children's Services at Ville Platte Mental Health Center. He has been treating Jordan since March of 1999 and stated in his testimony that Jordan was doing well now that he is in Sean's house. It was Mr. Fusillier's opinion that to change that arrangement now might be risky. He also stated that Sean's home provides a stable, structured household, which is what Jordan needs now.
Dr. Timothy Trant, a licensed psychologist and professor of psychology at Louisiana State University at Eunice, began treating Jordan in May of 2001. Dr. Trant stressed the importance of a consistent home environment in terms of its rules, expectations, and follow up. He also stated in his testimony that he had seen some academic and behavioral improvement since Jordan has been with Sean and Misty.
Both of the children's teachers indicated in their testimony at the hearing that the children were doing well since Sean has assumed custody and that both Misty and Sean were actively involved in the children's studies and schoolwork. Incidents of tardiness, which had been a problem while Kara had domiciliary custody, ceased after Sean and Misty took domiciliary custody of the children. The teachers indicated that they were familiar with Sean and Misty's household and knew it was a very structured, stable, and supportive household.
Limitation of Kara's Visitation
Despite the fact that the record in this case provides ample evidence supporting Sean's request to modify the consent agreement awarding Kara domiciliary custody of the children, we do not find sufficient evidence to warrant the trial court's severe limitations on Kara's visitation privileges. We see no justification for the limitations imposed by the trial court.
Non-custodial parents have a right to reasonable visitation. "A parent not *1251 granted custody or joint custody of a child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would not be in the best interest of the child." La.Civ.Code art. 136(A). This circuit recognizes the need for a child to have as much contact with both parents as possible. While the right of visitation is not unlimited, and is always subservient to the best interest of the child, we do not feel such stringent visitation requirements are required for the best interest of the children to be met in this case. Maxwell v. LeBlanc, 434 So.2d 375 (La.1983); Muller v. Muller, 94-281 (La.App. 3 Cir. 10/5/94); 643 So.2d 478.
The highly supervised and restricted visitation rights assigned by the trial court are usually reserved for situations where visitation with the parent causes intense distress to the children, typically circumstances where the children were abused or severely neglected. That was not the case here and it is clear that visiting with their mother causes no such distress to these children. In fact, the children's statements to the trial judge during the hearing indicate their strong desire for continued contact with Kara.
We agree with the trial court that it is important that the children not be in Mr. Crenshaw's presence; however, he is currently in prison. There is no evidence of recent drug activity and we do not feel there is a likelihood that this would be a significant factor in a short term visitation context. During the incident involving the drug lab in Kara's home she apparently was conscientious enough of the children's welfare to ensure that they were not actually in the home while the lab was present. We feel that the circumstances surrounding the existence of the drug lab create a reasonable question of Kara's responsibility and fitness as a custodial parent to these children; however, they do not warrant the severely limited and supervised visitation imposed by the trial court.
The facts of this case do not warrant supervised visitation of the children within a single building. We see no likelihood that the children could be harmed by allowing their mother to take them to the zoo or shopping, for instance. We do not see sufficient evidence that the mother cannot be trusted, even with short term unsupervised visitation rights.

CONCLUSION
Based on all the testimony presented at trial and for the reasons stated above, we cannot say that the trial court abused its discretion by awarding domiciliary custody of Jordan and Morgan to their father, Sean. We find no merit to Kara's arguments that domiciliary custody should remain with her for the sake of stability. While it is clear that stability and security are key factors in determining the living environment that is in the children's best interests, Kara's situation as outlined at trial through the testimony of numerous parties illustrates that Kara is not able to provide a stable and consistent situation at this time. The existence of the drug lab in Kara's home, as well as her long term relationship with Mr. Crenshaw, present a change in circumstances warranting a modification of the custody agreement between Sean and Kara.
The trial court was not clearly erroneous in finding that Kara was not responsible, reliable, or trustworthy enough to have permanent care and custody of the minor children. The best interests of the children are paramount, and given the particular circumstances of this case, we agree with the trial court's determination that the best interests of the children would be served at this point by awarding domiciliary custody to Sean, with joint custody and reasonable visitation allowed by Kara.
*1252 However, for the reasons stated above, we find that the trial court did commit an abuse of discretion in so severely limiting Kara's visitation rights. We modify the trial court's visitation order as follows: 1) we remove the requirement that Kara's visitation be exercised in the home of Brenda and Tommy Thomas and under the supervision of Brenda and Tommy Thomas; 2) we remove the requirement that Kara cannot leave the home of Brenda and Tommy Thomas for more than two hours during her visitation; and 3) we remove the requirement that Kara not transport the children more than three miles from the home of Brenda and Tommy Thompson during her visitation and that Brenda or Tommy Thomas supervise any visits away from the Thomas' household. We retain the trial court's order that Kara cannot have any contact with Bobby Lee Crenshaw while the children are visiting. We also retain the visitation schedule outlined in the trial court's May 10, 2002 judgment.

DECREE
For the forgoing reasons, the judgment of the trial court affirmed is in part and reversed in part. Costs of this appeal are to be divided equally between Sean and Kara Aucoin.
AFFIRMED IN PART; AMENDED IN PART; AND RENDERED.
AMY, J., Dissents and would affirm the trial court's judgment in full.
PICKETT, J., Dissents and would affirm the ruling of the trial court, finding no abuse of discretion in placing limitations on the defendant's visitation.