768 So.2d 85 (2000)
Parish David THIBODEAUX
v.
Heather Michael Chovanec THIBODEAUX.
No. 00-00082.
Court of Appeal of Louisiana, Third Circuit.
June 1, 2000.
Writ Denied July 26, 2000.
R. Michael McHale, McHale Law Firm, Lake Charles, LA, Counsel for Plaintiff-Appellee.
Henry R. Liles, Liles & Redd, Lake Charles, LA, Counsel for Defendant-Appellant.
(Court composed of NED E. DOUCET, Jr., C.J., SYLVIA R. COOKS and JOHN D. SAUNDERS, JJ.)
SAUNDERS, Judge.
This matter concerns a trial court's award of joint custody to the parents of Hunter Gage Thibodeaux, wherein Hunter's father, Parish David Thibodeaux, was named the domiciliary parent and Hunter's mother, Heather Michael Chovanec Thibodeaux, was awarded visitation rights. From this judgment, Heather appeals, seeking joint custody, domiciliary status, child and spousal support. We reverse and remand.

FACTS
Heather and Parish were married on January 5, 1993, in Ragley, Louisiana, and thereafter established their matrimonial domicile in Beauregard Parish. On September 3, 1994, Hunter Gage was born and, nearly five years later, on August 8, 1999, Heather and Parish were separated.
Initially, Heather and Parish sought an amicable divorce and saw an attorney together to arrange an La.Civ.Code art. 103 divorce. At this time, the couple agreed that, under a joint custody arrangement, Heather would be the domiciliary parent with Parish having liberal visitation rights to see Hunter. Parish also agreed to pay Heather $500.00 a month for child support and to allow she and Hunter to remain in the family home located in Longville, Louisiana; Parish was to live in a trailer he proposed to move onto their property in an effort to be near Hunter. The Article 103 divorce was never filed, however, and the amicable arrangement fell through.
A short time after Heather and Parish's separation, conflict arose and Heather moved in with her mother in Lake Charles, removed Hunter from South Beauregard *86 Elementary, and placed him in the Immaculate Conception Cathedral School in Lake Charles. On August 23, 1999, Parish filed a petition for a La.Civ.Code art. 102 divorce, seeking child support and sole domiciliary custody, with Heather having reasonable visitation with Hunter in Beauregard Parish only. Heather reconvened on September 9, 1999, seeking joint custody, designation as domiciliary parent, child and spousal support, and reasonable visitation rights for Parish. On September 20, 1999, the parties stipulated to a temporary joint custody arrangement, and on October 1, 1999, a hearing officer recommended Parish pay Heather $436.00 per month for child support and $650.00 per month in interim spousal support, retroactive to the date Heather's reconventional demand was filed.
This matter was heard on October 14, 1999, and on October 25, 1999. Judgment was rendered on December 1, 1999, awarding the parties joint custody of Hunter, with Parish named as domiciliary parent and with Heather being granted specific visitation rights, including alternating weekends and holidays, and extended visitation during the summer months.

LAW AND ANALYSIS

I. Error Assigned
Heather brings this appeal assigning as error the trial court's rule granting Parish domiciliary status over Hunter, alleging specifically, among other things, that the trial court placed undue emphasis on factor (4) of La.Civ.Code art. 134, while failing to give proper consideration to factors (2), (3), (10) and (12) of this statute. We agree.
"It is well settled that upon appellate review, the determination of the trial court in custody matters is given great weight and the court's determination will not be disturbed on appeal absent a showing of abuse of the court's discretion." William v. Bernstine, 626 So.2d 497, 501 (La.App. 3 Cir.1993). La.Civ.Code art. 134 provides the following:
The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
Further guiding custody determinations, in Bynog v. Bynog, 95-173, pp. 5-6 (La. App. 3 Cir. 7/26/95); 663 So.2d 86, 89, this court emphasized the following:

*87 Although custody decisions ultimately must turn on the "best interest" of the children affected, trial judges are not permitted to overlook the factors legislatively enacted to guide their deliberations or point to one factor over all the others which may favor a contrary custody placement. Louisiana Civil Code Article 134.
In 1981 the Louisiana legislature adopted an act authorizing joint custody of children after separation or divorce. Once joint custody is deemed best, a trial judge is not free to demand or implement a plan which in operation forces either parent to play the role of a mere "visitor" in a child's life. Christian v. Christian, 535 So.2d 842 (La. App. 2 Cir.1988); Foy v. Foy, 505 So.2d 850 (La.App. 2 Cir.1987); Carroway v. Carroway, 441 So.2d 494 (La.App. 2 Cir. 1983); Adams v. Adams, 441 So.2d 490 (La.App. 2 Cir.1983). La.R.S. 9:335(A)(2)(b), also recently recast and amended, further expresses in mandatory terms "to the extent feasible, physical custody of the children shall be shared equally."
(Emphasis supplied; footnotes omitted.)
In drawing his conclusions, the record indicates the trial judge found factors (8), (9) and (11) not relevant, that is, that distance between the parties residences was not a factor and that the preference's of a five year old child regarding (8) and (9) also was not something the court could consider. With this we agree. The trial judge stated that regarding the remaining factors, "I don't find a dime's worth of difference between these two parties." The trial judge did, however, discuss his observations and conclusions.
The trial judge conceded that Heather had more hands on experience with Hunter as a result of her following the "traditional role" of mother; he found it less than extraordinary that Heather provided most of the care and nurturing of Hunter during the early years of his life, and he found that she carried the burden of establishing herself as primary care-giver of Hunter. He faulted Heather for taking Hunter out of school for a week to avoid losing custody. The trial judge also made speculations about Heather's romantic interest in a man, who currently resides in California, and despite a lack of evidence indicating this intent, he conjectured that she might later choose to relocate herself and Hunter to California.
Discussing Parish's attributes, the trial judge particularly credited the fact that Parish will maintain a stable environment to which Hunter was accustomedto the extent of remaining in the home that the child lived in most of his life, which is located very near the extended Thibodeaux family network. The trial judge concluded that the evidence indicated Parish's family support system was more supportive than Heather's. While admitting concern about Parish's abuse of alcohol, the trial judge found that the evidence did not indicate that Parish's drinking actually put the child unduly at risk. He noted, however, that both parties showed poor judgment in regards to drinking and driving with Hunter. Ultimately, explaining that where the father appeared to have more stable relationships than the mother, the trial judge concluded that Parish, not Heather, was most appropriately designated domiciliary parent.
After reading the record as a whole, we find the trial judge abused his discretion in denying Heather domiciliary status over Hunter. We find error where the trial judge placed more weight on the testimony evidencing the extent of Parish's family connections where the evidence similarly revealed Heather's extended family having played an important part in the nurturing and care of Hunter. Further, we find the evidence and testimony presented by both parties overwhelmingly supports, as conceded by the trial judge, that Heather has been Hunter's primary care-giver from birth to the present. To remove domiciliary custody from the primary care-giver in exchange for a supportive *88 paternal extended family simply does not balance out in the best interests of the child, particularly where, as stated by the trial judge, there is not a "dime's worth of difference" in the remaining considerations of La.Civ.Code art. 134. Moreover, the record convinces us that Parish has a drinking problem which mitigates against his serving as custodial parent.

CONCLUSION
In light of the foregoing discussion, we reverse and remand this matter for the implementation of joint custody, with Heather designated as domiciliary parent of Hunter, for the implementation of visitation consistent therewith. We remand further for the calculations of child support and spousal support.
REVERSED AND REMANDED.