# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 09-1266

ROSALIND REED THIBODEAUX

VERSUS

LAUREN O'QUAIN

************

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 73,786
HONORABLE EDWARD M. LEONARD, DISTRICT JUDGE

************

DAVID E. CHATELAIN[*]
JUDGE

************

Court composed of James T. Genovese, Shannon J. Gremillion, and David E. Chatelain, Judges.

Gremillion, J., concurs and assigns written reasons.

**AFFIRMED.**

Jack Derrick Miller
Attorney at Law
Post Office Box 1650
Crowley, Louisiana 70527-1650
(337) 788-0768
Counsel for Defendant/Appellee:
    Lauren Wade O'Quain

Nicole B. Breaux
Cox, Fitzgerald, L.L.C.
113 West Convent Street
Lafayette, Louisiana 70501
(337) 233-9743
Counsel for Defendant/Appellee:
    Lauren Wade O'Quain

---

[*]Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Darhlene M. Major**
**Attorney at Law**
**7022 Island Road**
**Jarreau, Louisiana  70749-3008**
**(225) 362-9036**
**Counsel for Plaintiff/Appellant:**
**Rosalind Reed Thibodeaux**

**CHATELAIN, Judge Pro Tempore.**

In the present case, the mother appeals the trial court's joint custody plan and designation of the father, her former husband, as domiciliary parent of their son. For the following reasons, we affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

Rosalind Reed Thibodeaux (Rosalind) and Lauren O'Quain (Lauren) were married in August 2003. On October 14, 2004, their only child, Patrick, was born. The parties physically separated in December 2005, when Rosalind left the marital domicile. In January 2006, Lauren filed for divorce, and a judgment of divorce was rendered on June 22, 2006. By mutual agreement, Rosalind and Lauren shared equal custody of Patrick on alternating weeks.

Prior to leaving the matrimonial domicile, Rosalind was romantically involved with a co-employee, Kyle Thibodeaux (Kyle), whom she married in June 2007. In September 2008, Lauren married Elsie Thibodeaux, Kyle's former wife.

Rosalind and Kyle live in St. Martin Parish together with Rosalind's twelve-year-old daughter from a previous marriage, Clélie, and Kyle's daughters from his marriage to Elsie, Nasia, who is fifteen years of age, and Kylie, who is fourteen years of age.

Lauren lives with Elsie in Lafayette Parish. Pursuant to recommendations of Dr. Ron Ray, court-appointed psychologist, Nasia and Kylie visit with Elsie every other weekend from 9:00 a.m. to 5:00 p.m. Saturday and Sunday. Until a few weeks prior to trial, Lauren was not allowed to be present when the girls visited Elsie. Shortly before trial, the psychologist modified his recommendation and allowed Lauren to be present for one-half of each day of the girls' visitation with Elsie.

On August 5, 2008, Rosalind filed suit for sole custody or, in the alternative, joint custody with her being designated the domiciliary parent of Patrick. Lauren reconvened, seeking sole custody with Rosalind having supervised visitation and requesting that Rosalind be drug tested. If Rosalind tested negative for drugs, Lauren sought joint custody with him being named domiciliary parent. Rosalind filed a rule for child support on October 22, 2008.

A hearing-officer conference was held on November 24, 2008, and the parties continued sharing physical custody of Patrick on alternating weeks. The trial court ordered Dr. Kenneth Bouillion, a psychologist, to conduct psychological evaluations of Rosalind, Lauren, and Patrick. The order instructed Dr. Bouillion to conduct a custody evaluation of the parties and Patrick, consider the factors listed in La.Civ.Code art. 134, and render a written report to the court.

Trial was held on July 23, 2009. Rosalind, Lauren, Dr. Ray, Elsie, Rosalind's first husband, Patrick's former babysitter, and the owner of Patrick's current day care testified at trial. Dr. Bouillion's report and deposition were introduced into evidence. The trial court took the matter under advisement, issued written reasons for judgment, and thereafter awarded joint custody of Patrick to Rosalind and Lauren. Lauren was designated the domiciliary parent, and Rosalind was awarded visitation three weekends per month during the school year and alternating weeks during the summer months. The holidays are shared equally by the parties (to supersede regular visitation in the event of a conflict). Rosalind was taxed with all costs; child support was not set.

Rosalind appeals and assigns six errors with the trial court's judgment: 1) the trial court did not apply the correct principles of law set forth in Louisiana Civil Code

2

Articles 131 and 134 because it failed to analyze all factors relevant to Patrick's best interest and placed undue weight on one of the twelve nonexclusive factors of La.Civ.Code art. 134; 2) the trial court committed legal error and abused its discretion in granting Lauren domiciliary status; 3) the trial court erred in its findings of fact regarding the issues raised by factors (4) and (10) of La.Civ.Code art. 134, specifically on the issues of the stability of the parents' households and her willingness and ability to facilitate and encourage a close and continuing relationship between Patrick and Lauren; 4) the trial court based its determination of custody on speculation, innuendo, and conjecture for which there is no reasonable basis in the evidence; 5) the trial court abused its discretion in failing to adopt or give any weight or consideration to Dr. Bouillion's recommendations; and 6) the trial court abused its discretion in placing undue weight on the testimony of Dr. Ray.

## DISCUSSION

Trial court determinations in child custody matters are entitled to great weight, and appellate courts will not disturb an award of child custody "in the absence of a clear showing of abuse." *Bergeron v. Bergeron*, 492 So.2d 1193, 1196 (La.1986). In a custody proceeding, the trial court's focus is the best interest of the child. La.Civ.Code art. 131; *Evans v. Lungrin*, 97-541, 97-577 (La. 2/6/98), 708 So.2d 731. All factors relevant to the child's best interest must be considered. La.Civ.Code art. 134. As provided in Article 134, the factors considered "may include":

(1) The love, affection, and other emotional ties between each party and the child.

(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

3

(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(6) The moral fitness of each party, insofar as it affects the welfare of the child.

(7) The mental and physical health of each party.

(8) The home, school, and community history of the child.

(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

(11) The distance between the respective residences of the parties.

(12) The responsibility for the care and rearing of the child previously exercised by each party.

**Article 134 Factors**

Rosalind urges that the trial court's alleged failure to apply the correct principles of law entitles her to a de novo review of the record. She argues that the twelve factors enumerated in Article 134 are of equal weight and must be considered by the trial court in its determination.

From the outset, we observe that contrary to her argument, Article 134 mandates only that all factors relevant to the best interest of the child be considered; it then enumerates twelve factors which *may* be relevant to the best interest

determination.[1] As explained in *Cooper v. Cooper*, 43,244, p. 6 (La.App. 2 Cir. 3/12/08), 978 So.2d 1156, 1160 (citations omitted):

> The court is not bound to make a mechanical evaluation of all of the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors. The court is not bound to give more weight to one factor over another, and when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence presented. Moreover, the factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court.

*See also, Aucoin v. Aucoin*, 02-756 (La.App. 3 Cir. 12/30/02), 834 So.2d 1245; *Hawthorne v. Hawthorne*, 96-89 (La.App. 3 Cir. 5/22/96), 676 So.2d 619, *writ denied*, 96-1650 (La. 10/25/96), 681 So.2d 365 (holding that the factors of Article 134 are illustrative and serve as a guide to the trial court).

Our review of the trial court's written reasons indicates that it did address all the relevant factors[2] enumerated in Article 134. While the trial court did not specifically address all the factors enumerated in Article 134, it did address all factors that favored one party over the other. As discussed below, a review of the record shows that with respect to the applicable Article 134 factors, Rosalind and Lauren are essentially equal in many respects.

The trial court addressed factors one, two, and three together in its reasons for judgment, stating:

> Rosalind testified that Lauren loves their son and the love is mutual. However, he is not qualified to be primary custodian of Patrick because he is emotional, fun to be with, and has mental problems.

---

[1] The cases that Rosalind cites as support for the proposition that the twelve factors identified in Article 134 are mandatory, *Thibodeaux v. Thibodeaux*, 00-82 (La.App. 3 Cir. 6/1/00), 768 So.2d 85, *writ denied,* 00-2001 (La. 7/26/00), 766 So.2d 1262, and *Bynog v. Bynog*, 95-173 (La.App. 3 Cir. 7/26/95), 663 So.2d 86, reference Article 134, but fail to recognize that Article 134 uses the permissive "may" to introduce the twelve factors.

[2] Because of Patrick's young age, the ninth factor, the reasonable preference of the child, is inapplicable.

While there is no substantiation of any mental problems with Lauren, Rosalind's opinion is obviously bourne [sic] of her expertise derived from having majored in psychology and anthropology. She does not seriously dispute [Lauren's] ability to care for the child, but maintains that he does not provide a stable structured environment or spiritual guidance. She, to the contrary, maintains a strict and structured environment in her home, so much so that she has published a set of rules/restrictions for all in her household to adhere to. She believes in structure, adherence to structure, and therefore in this Court's impression, her control. Emotion on her behalf was not mentioned in her testimony, only structure, rules and adherence thereto. In fact, she doesn't have the opportunity to have fun with Patrick like he does with his father because of the structure and discipline which she feels it is her duty to impose.

Based on the history of the parties the fifth factor (permanence, as a family unit, of the proposed custodial home), the eighth factor (home, school, and community history of the child), the eleventh factor (the distance between respective residences of the parties), and the twelfth factor (the responsibility for the care and rearing of the child previously exercised by each party), do not favor either party. Notwithstanding, as elaborated more fully herein, the trial court found that Rosalind and Kyle have had a negative effect on Nasia and Kylie's relationship with Elsie which may have a negative effect on Patrick's relationship with Lauren.

Our careful review of the record reveals that Rosalind testified that she did not have concerns about Lauren's moral fitness. As reflected by the evidence, she and Kyle are raising their children in the Catholic faith, and they regularly attend church. Therefore, the sixth factor is also equal.

Likewise, there is no evidence that either party's physical health would affect his or her relationship with Patrick. Although Rosalind testified that Lauren may have some mental issues and that he exhibits emotional and irrational behavior at times, stating that he threatened to burn her house, take Patrick, ruin her life and her family, and bankrupt her, she did not explain those claims or give facts to establish

6

that the claimed behavior actually occurred. Moreover, the trial court did not find her credible. Therefore, there is no evidence that the seventh factor, mental or physical health of either party, favors one over the other.

After reviewing the aforementioned factors outlined in Article 134, we come to the focal point of this appeal: the trial court's assessment of the fourth and tenth factors. The fourth factor is the length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment; the tenth factor is the willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

As the trial court noted in its reasons for judgment, Rosalind contends that she would provide Patrick more stability. Elaborating on its determination, the trial court concluded that, contrary to Rosalind's contention, her idea of stability equated to control. After considering the evidence, including its observation that Rosalind's insistence on control excluded emotion and that her insistence on structure and discipline negated the opportunity for Patrick to have fun, the trial court weighed the stability factor in favor or Lauren. Although it may be appropriate and fitting for Rosalind to publish rules and consequences for her older, teenage girls, we cannot say it was unreasonable for the trial court to have concluded that such a degree of control and lack of emotional investment were not necessarily in the best interest of Patrick, a much younger child.[3]

Next, Rosalind argues that the trial court attributed too much weight to the willingness and ability of each party to facilitate and encourage a close and

---

[3]In making this statement, we are not impugning Rosalind's use of rules and consequences. We are keenly aware that "[a]n award of custody is not a tool to regulate human behavior." *Cleeton v. Cleeton*, 383 So.2d 1231 (La.1980). Our comment in this regard is to be understood in light of the trial court's duty under La.Civ.Code art. 134 to utilize those factors to determine the best interest of this child at this time.

continuing relationship between the child and the other parent. She complains that the trial court disregarded her testimony as to her willingness and ability to facilitate and encourage a close and continuing relationship between Patrick and Lauren; however, the trial court addressed this issue, in part, in his credibility determinations, finding Lauren and Elsie credible, but finding Rosalind not to be credible.

Rosalind also complains that the trial court's consideration of evidence regarding the relationship of Patrick's stepsisters, Nasia and Kylie, with Elsie, his stepmother, was inappropriate. To the contrary, as elaborated upon more fully below, we view this relationship and the impact that Rosalind and Kyle have had on it as being central to the trial court's designation of Lauren as domiciliary parent.

In the present case, the trial court determined that Rosalind and Kyle's actions amounted to "deliberate and willful alienation," which "led to the complete rejection by the two girls of their mother, Elsie." This conclusion is fully supported by the record which shows that Nasia and Kylie resent and disrespect Elsie to such an extent that after two and one-half years of counseling with Dr. Ray, they only visit their mother every other weekend for eight hours a day and that Rosalind and Kyle have contributed to and continue to contribute to that resentment and disrespect.

Elaborating upon the background facts which form the basis of these parties' relationships, Elsie testified that Kyle and Rosalind started dating while she and Kyle were married. She also stated that their relationship devastated her and caused her to become depressed. Dr. Ray verified these facts. Because of Elsie's depression, Kyle became Nasia and Kylie's primary caregiver. According to Elsie, Kyle either lived with Rosalind or in a trailer next to her home before their marriage. Even though Rosalind claims that the evidence fails to establish these facts, our review of

8

the record shows that Elsie's and Dr. Ray's testimonies on this issue were not disputed.

Dr. Ray testified that Kyle admitted to him that he and Rosalind were previously openly disrespectful of Elsie in front of Nasia and Kylie. He explained that much of what Nasia and Kylie resent with regard to Elsie occurred when Elsie was depressed. Dr. Ray pointed to negative comments Rosalind and Kyle made to the girls prior to Elsie's marriage to Lauren as being indicative of the overt disrespect shown by Rosalind and Kyle for Elsie to the girls. Dr. Ray further testified that although Kyle assured him that he and Rosalind had ceased that detrimental behavior, he believed otherwise.

Rosalind seeks to deny the negative impact that she and Kyle have had on Nasia and Kylie. She argues that Nasia and Kylie's alienation from Elsie was caused by Elsie's own actions. In other words, Rosalind denies that she and/or Kyle bear any responsibility for Elsie's depression which, as verified by Dr. Ray, was caused by Kyle's infidelity. She also denies that they continue to contribute to the girls' anger and hostility toward Elsie. The evidence establishes that this is not the case.

The weekend before the trial of this matter, Nasia and Kylie had scheduled visitation with Elsie. Due to the girls not obeying her instructions, Elsie told them they could not bring their cell phones with them when they visited her. Despite her instructions, when Elsie arrived to pick up the girls, they had their cell phones. Elsie instructed them to return the cell phones to their home. Rather than doing as instructed, the girls attempted to contact their father. When they could not contact their father, Kylie called Rosalind. Elsie testified that she was within earshot when she heard Rosalind tell Kylie that she and Nasia did not have to leave their cell

9

phones because Elsie did not pay the bill for them. To resolve the issue, Elsie had to drive from St. Martinville to Whiskey Bay, some thirty to forty miles, to speak with Kyle. Eventually, the girls left their cell phones home, but Kyle called them four to five times during their visitation with Elsie to make sure they were okay. When presented with this scenario, Dr. Ray opined that such behavior undermines Elsie's authority with the girls and insinuates to them that they may not be safe while with their mother.

We would be remiss if we did not observe that Dr. Ray's testimony also established that all the parents have engaged in poor behavior toward each other at times and that he acknowledged that Elsie and Lauren have also contributed to the problem, stating, "there's still so much animosity between the parties that the girls cannot not pick up on it." He also explained that some of the girls' resentment arises from Elsie's not informing them when she started dating Lauren and that Elsie did not follow his recommendation to slow down her relationship with Lauren. Elsie explained that her relationship with the girls was strained before she met Lauren and that she did not inform them when she began dating Lauren because classes she attended in conjunction with her divorce from Kyle suggested that she should not do so. As to her marrying Lauren, she acknowledged that Dr. Ray recommended that she slow down her relationship with Lauren but defended her actions by explaining that she waited almost a year before marrying Lauren. Furthermore, Dr. Ray testified that Elsie had apologized to Nasia and Kylie more than once for her prior behavior and that Elsie was trying to be a good mother, but the girls were not relenting in their attitude toward her.

10

The trial court found it "incomprehensible" that Nasia and Kylie have anger only toward Elsie, not Kyle "who broke up the family," and explained its concerns, stating: "The Court is not convinced that Patrick's relationship can be maintained living primarily in an atmosphere where the two teenage girls who primarily reside with Rosalind and Kyle, have been ingrained with such anger and disdain toward both their mother, (Patrick's stepmother), and for Lauren, (Patrick's father)." On the other hand, the trial court found Lauren to be "genuine in looking out for the best interests of Patrick and preserving [Patrick's] relationship with both of his parents."

Rosalind strenuously argues that Nasia, Kylie, and Elsie's relationship and Dr. Ray's testimony regarding the dynamics of this relationship are irrelevant and have no bearing on what is best for Patrick. We disagree and find that the trial court did not err in its determination that this relationship is, as supported by Dr. Ray's testimony, indicative of what may become of Lauren and Patrick's relationship if Rosalind is designated the domiciliary parent. We also find no merit to Rosalind's argument that Dr. Ray's opinions are speculation and conjecture. As borne out by the record, Dr. Ray's opinions are based on his expertise in family counseling and his involvement in the relationship of most of these parties for more than two and one-half years.

It is obvious that Rosalind wants to separate her behavior with Patrick from her behavior with Nasia and Kylie, claiming that it has no bearing on her relationship with Patrick and Lauren. In this court's eyes, the trial court properly considered Rosalind and Kyle's behavior with regard to Nasia and Kylie as it reflected on their maturity level and their indiscretion as parents and exemplified their disrespect for Elsie as the girls' mother. More importantly, Rosalind and Kyle's behavior shows a

11

lack of understanding of the significance that relationship bears on the best interest of Nasia and Kylie. Accordingly, we find that the trial court properly concluded that Rosalind and Kyle's continuing negative behavior toward Elsie with Nasia and Kylie may have a negative effect on Patrick and his relationship with his stepmother, Elsie, and that this conclusion is reasonably based on the record.

We also find it was reasonable for the trial court to conclude that Rosalind's and Kyle's negative behavior with Nasia and Kylie may negatively affect Patrick's relationship with Lauren. Furthermore, we find that if Rosalind and Kyle have no qualms utilizing such behavior and actions with Nasia, Kylie, and Elsie, it is reasonable to conclude that they would employ such negative behavior with Patrick regarding Lauren should they decide to do so.

The trial court's assessment of the relevant factors set forth in Article 134 and its ultimate determination are reasonably supported by the record. Therefore, we find no error with the trial court's best-interest assessment under Article 134 or its designation of Lauren as domiciliary parent.

**Court-Appointed Expert**

Rosalind further asserts that the trial court erred in failing to adopt or give any weight or consideration to Dr. Bouillion's opinion that she be designated as the domiciliary parent. She contends that Dr. Bouillion's assessment and recommendation were not contradicted by other competent expert testimony.

The trial court has much discretion in its assessment of expert testimony. *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106 (La.1990). "The weight to be given expert testimony depends, ultimately, on the facts on which the testimony is based, as well as the professional qualifications and experience of the expert." *Miller v.*

*Miller*, 01-356, p. 8 (La.App. 3 Cir. 10/31/01), 799 So.2d 753, 758 (citing *Meany v. Meany*, 94-251 (La. 7/5/94), 639 So.2d 229). After weighing and evaluating an expert's opinion in light of all the evidence presented at trial, the trial court may accept or reject the opinion expressed by any expert. *Kramer v. Petroleum Helicopters, Inc.*, 08-133 (La.App. 3 Cir. 11/26/08), 999 So.2d 101, *writ denied*, 09-402 (La. 5/1/09), 6 So.3d 811.

The trial court's reasons for judgment establish that the trial court did consider Dr. Bouillion's recommendation and testimony. However, it is equally clear that Dr. Bouillion did not have all the relevant evidence available to him when he formulated his recommendation. For example, Dr. Bouillion considered it important that Rosalind had a routinely-structured home with a normal family environment. Neither Dr. Bouillion's report nor his testimony establish that he was aware of the extent of the structure imposed by Rosalind in her household. In another instance, the record shows that Dr. Bouillion was informed during his deposition that Kyle and/or Rosalind had instructed Nasia or Kylie to take pictures of Patrick's room at Lauren and Elsie's home. When presented with that evidence, Dr. Bouillion opined that such behavior was a violation of boundaries. He was also informed during his deposition that Rosalind and Kyle "badmouthed" Lauren. In his opinion, this was an important factor, and he testified that he would recommend no negativity by the parents. While Dr. Bouillion did receive a note from Dr. Ray and had a telephone conference with him the morning of his deposition, the record does not establish the extent of what Dr. Ray related to him in his note or during the telephone conference. It is likewise clear that Dr. Bouillion also did not know of the cell phone incident that occurred the weekend before trial.

13

After considering the record as a whole, we find that the trial court did not abuse its discretion in its evaluation of Dr. Bouillion's testimony and recommendation. As shown by the record, the trial court was keenly aware of the facts Dr. Bouillion had before him when he made his recommendations. Therefore, we find no error in the trial court's decision not to adopt Dr. Bouillion's opinion.

Rosalind also faults the trial court's acceptance of Dr. Ray's opinions and not Dr. Bouillion's opinions. In support of her argument, she contends that Dr. Bouillion had contact with her, Lauren, and Patrick and that Dr. Ray did not. We disagree. Although Dr. Ray's testimony and opinions were not directed to the trial court's award of Patrick's custody and he did not make a recommendation regarding that question, the record bears out his familiarity with most of the personalities at play in this custody case, his understanding of the complex familial relationships at work, and his keen awareness of the psychological interplay among these individuals.

Lastly, we acknowledge that the trial court made findings of fact that are not clearly established by the record, e.g., Patrick being disrespectful to Lauren. Notwithstanding this factual error, the trial court's ultimate conclusion that it is in Patrick's best interest for Lauren to be the domiciliary parent is borne out by the record. Accordingly, this assignment of error is without merit.

## DISPOSITION

The judgment of the trial court is affirmed. All costs are assessed to Rosalind Reed Thibodeaux.

**AFFIRMED.**

14

09-1266

ROSALIND REED THIBODEAUX

VERSUS

LAUREN O'QUAIN


**GREMILLION, Judge, concurs.**

In this matter, the trial court was required to determine a custody arrangement for a four-year-old little boy. The trial court appointed Dr. Kenneth Bouillion, a clinical psychologist who felt that the boy's mother, Rosalind, should be the domiciliary parent, but concluded that "Rosalind and Lauren are both competent parents in that they are knowledgeable of Patrick's needs and fully capable of meeting those needs." Based on that conclusion, I cannot say that the trial court abused the vast discretion reserved to it in making determinations regarding custody. I therefore concur in the majority's result.

Having concurred, I do wish to state my concern that both the trial court and the majority were needlessly harsh in their treatment of Rosalind Reed Thibodeaux. For example, the evidence showed that Rosalind insisted on rigid structure and discipline in her household. I am unable to conclude, as the trial court and majority did, that this is a strike against Rosalind. Likewise, Dr. Bouillion clearly believed that young Patrick would benefit from the fact that Rosalind's "home environment" was "stable and structured."

This matter did not involve the custody of Rosalind's two teenaged stepdaughters. Thus, I respectfully disagree with the decision of the trial court and the majority to focus most of their time and energy on issues relating to those girls. However, once both this court and the court below determined that the family life of

1

the two teenagers was important, they should have considered all the evidence introduced regarding these two girls, including their preferences in living arrangements. In fact, while the trial court concluded that the structure Rosalind provided was excessively rigid, her stepdaughers preferred living in Rosalind's household to their mother's.

The trial court clearly took issue with the fact that Rosalind's testimony was "rehearsed" and consequently, "not credible." I find it unsurprising that a mother would rehearse her testimony when the welfare of her small child is at stake. Nevertheless, I am constrained by the applicable standard of review to concur in the ruling of this court.