NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

14-1153

MARGARET KENDRICK

VERSUS

JODY KENDRICK

**********

APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 22399
HONORABLE WARREN DANIEL WILLETT, DISTRICT JUDGE

**********

DAVID KENT SAVOIE
JUDGE

**********

Court composed of Marc T. Amy, John E. Conery, and David Kent Savoie, Judges.

AFFIRMED.

**Henry H. Lemoine, Jr.**
**Attorney at Law**
**607 Main St.**
**Pineville, LA 71360**
**(318) 473-4220**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Margaret Kendrick**

**Scott M. Prudhomme**
**Attorney At Law**
**457 Second Street**
**Colfax, LA 71417**
**(318) 664-6129**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Jody Kendrick**

**SAVOIE, Judge.**

In this custody dispute, the father sought to modify an existing joint custody judgment rendered by default so as to designate himself as the domiciliary parent. After trial, the trial court awarded the parties "joint and shared custody," and designated the father as the domiciliary parent, with the parties equally sharing the physical custody of the child on an alternating weekly basis. The mother has appealed. For the reasons that follow, we affirm.

## Factual and Procedural Background

Jody Kendrick ("Jody") and Margaret Kendrick Dufour ("Margaret") were married on May 29, 1998. Their only child, Brooke, was born on September 17, 2002. During the parties' marriage, they resided in Georgetown, Louisiana, and Brooke attended school in Georgetown. Margaret worked as a registered nurse, and Jody testified he did not work due to a disability.

Margaret filed for divorce on October 31, 2012. Jody subsequently filed an affidavit waiving formal citation, service of process, notice, and appearance at trial, and consenting to a default judgment. A preliminary default was entered November 13, 2012. On November 27, 2012, both Jody and Margaret submitted affidavits attesting to their agreement of a joint custody arrangement. A "Judgment of Divorce" was rendered November 27, 2012, wherein the parties were awarded joint custody of Brooke, with Margaret designated as the "primary custodial parent," subject to reasonable visitation by Jody, which was in accordance with the agreement set forth in the parties' affidavits. Jody was also ordered to pay child support in the amount of $400.00 per month.

1

Following the divorce, Jody continued to reside in Georgetown, and, testified that at the time of trial in August 2014, he had worked as a logger for about a year and a half. He has not remarried.

Margaret has moved several times following the divorce, changed employers and job locations multiple times, and remarried twice. In March 2013, she married John Coutee, and resided with him for a short time at Margaret's mother's house in Converse, Louisiana, along with Margaret's older daughter from a previous marriage. In the fall of 2013, Brooke began sixth grade in Converse. In October 2013, Brooke went back to school in Georgetown, where she has continued to attend. There was testimony that Margaret thereafter moved to Bentley, Louisiana, and then to Pollock, Louisiana. There was also testimony that the parties attempted to reconcile their relationship in late 2013 through early 2014.

There was conflicting testimony at trial regarding the amount of time Brooke spent with the respective parties from the time the parties divorced through May of 2014. The parties also testified that Brooke is, and always has been, a good student, is mature, and that she does well in several different sports.

In May 2014, Margaret and Mr. Coutee divorced. Margaret testified that Mr. Coutee was abusive during their marriage. Margaret married Keith Dufour in May 2014. At the time of trial, Margaret and Keith resided together in Pineville, Louisiana, in a three-bedroom house that they rented from Job Prudhomme. Mr. Prudhomme also lived with them.

Keith Dufour works as a registered nurse. He has two sons, ages 11 and 15, from a prior marriage. Margaret testified that Mr. Dufour has physical custody of his boys every other weekend, and every other week during the summer. In addition, Margaret's older daughter from a prior marriage resides with them in the

summer or whenever she is home from college. Margaret testified that she and Mr. Dufour were in the process of saving for a down payment on a new home.

Margaret testified that she sought legal assistance to collect back-due child support from Jody in May 2014 and demanded payment from Jody. On June 6, 2014, Jody filed a "Rule to Modify Custody and Child Support" seeking joint custody of Brooke, the designation of Jody as the domiciliary parent subject to reasonable visitation by Margaret, and termination of child support. Margaret filed an "Answer and Reconventional Demand" seeking back-due child support.

The parties testified that during the summer of 2014 and through the date of trial, they equally shared the physical custody of Brooke on an alternating weekly basis. Margaret testified that, at the time of trial, Brooke was enrolled in school in Pineville, and that school was to begin several days following trial.

A trial was held on August 5, 2014. The trial court ultimately awarded "joint and shared" custody of Brooke to the parties, designated Jody as the domiciliary parent, and set forth an "implementation plan" where the parties alternate physical custody of Brooke in one-week intervals and alternate holidays. The trial court also terminated Jody's future child support obligation, but awarded Margaret back-due child support in the amount of $6,330.00.

## *Discussion*

### I. Assignment of Error 1: Applicable Burden of Proof

Margaret first contends that the prior default judgment designating her as the "primary custodial parent" was a considered decree, and that the trial court erred by failing to apply the heavy burden of proof applicable to considered custody

decrees as enunciated in *Bergeron v. Bergeron,* 492 So.2d 1193 (La.1986)[1]. The trial court applied the lesser burden applicable to modification of stipulated custody judgments and determined that there had been a material change of circumstances since the original custody decree and that the proposed modification was in the best interest of the child. *See Evans v. Lungrin,* 97-541, 97-577 (La. 2/6/98), 708 So.2d 731.

We disagree with Margaret and find that the trial court applied the correct burden of proof. Our court has recognized that child custody agreements obtained by default judgments are not considered decrees:

> A considered decree is one for which evidence as to parental fitness to exercise custody is received by the court. *Evans v. Terrell*, 27,615 (La.App.[2d Cir.]2/6/95), 665 So.2d 648, *writ denied*, 96-0387 (La.5/3/96), 672 So.2d 695. **By contrast, a judgment with a custody plan that was entered by default, was not contested or was merely entered by consent of the parties is not a considered decree**. *Barnes v. Cason*, 25,808 (La.App. 2 Cir. 5/4/94), 637 So.2d 607, *writ denied*, 94-1325 (La. 9/2/94), 643 So.2d 149.

*Schuchmann v. Schuchmann,* 00-094, p. 3 (La.App. 3 Cir. 6/1/00), 768 So.2d 614, 616 (quoting *Roberie v. Roberie,* 33,168 (La.App. 2 Cir. 12/8/99), 749 So.2d 849) (emphasis added). *See also*, *Link v. Link,* 13-1441 (La.App. 3 Cir. 5/7/14), 139 So.3d 659.

Our court has further recognized that evidence of parental fitness presented at a hearing to confirm a preliminary default does not render a default judgment a considered custody decree. *Link,* 139 So.3d 659. "[A] considered decree in the best interest of the children mandates a higher evidentiary consideration of the

---

[1] Per *Bergeron,* when a trial court has made a considered decree of permanent custody, the party seeking a change bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child.

circumstances of the litigants that is simply not met by a default judgment proceeding." *Id.* at 663.

In the instant matter, the prior custody judgment was a default judgment rendered upon submission of affidavits by the parties wherein they attested to an agreement regarding custody. No testimony was presented in open court. Therefore, the original custody judgment is not a considered decree, and modification thereof is subject to the lesser burden stated in *Evans,* 708 So.2d 731.

Margaret notes that the trial court stated that the default judgment was a considered custody decree. This is harmless error since the trial court did not apply the burden set forth in *Bergeron,* 492 So.2d 1193. *See Link,* 139 So.3d 659. Because the trial court's oral reasons show that it correctly applied the burden applicable to modification of stipulated custody decrees, despite its designation of the default judgment as a considered decree, *de novo* review of the record is not warranted.

## II. Assignments of Error 2 and 3:
## Change of Domiciliary Parent was In The Best Interest of the Child

Margaret next contends that the trial court erred in designating Jody as the domiciliary parent because (1) the facts do not support a finding that doing so was in Brooke's best interest, and (2) the trial court's ruling was based on a speculative concern regarding the opportunity for sexual conduct between one of Margaret's husband's sons and Brooke arising from the children sharing a room, when there was no evidence, or suggestion, of any such conduct presented by the parties at trial.

The standard of review in child custody matters has been clearly stated by this court:

[A] trial court's determination in a child custody case is entitled to great weight on appeal and will not be disturbed unless there is a clear abuse of discretion. *Cooley v. Cooley,* 94-251 (La.App. 3 Cir. 10/5/94), 643 So.2d 408; *Mayeux v. Mayeux,* 93-1603 (La.App. 3 Cir. 6/1/94), 640 So.2d 686.

*Hawthorne v. Hawthorne,* 96-89, p. 12 (La.App 3 Cir. 5/22/96), 676 So.2d 619, 625, *writ denied,* 96-1650 (La. 10/25/96), 681 So.2d 365.

In a child custody proceeding, the trial court must consider all factors relevant to the child's best interest. La.Civ.Code art. 134. Further,

[t]he court is not bound to make a mechanical evaluation of all of the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors. The court is not bound to give more weight to one factor over another, and when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence presented. Moreover, the factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court.

*Thibodeaux v. O'Quain,* 09-1266, p. 5 (La.App. 3 Cir. 3/24/10), 33 So.3d 1008, 1013 (quoting *Cooper v. Cooper,* 43,244 (La.App. 2 Cir. 3/12/08), 978 So.2d 1156).

In its oral reasons for judgment, the trial court thoroughly considered each of the factors of La.Civ.Code art. 134, stating as follows:

[T]he court will then consider the love, affection, and emotional ties between each party and the child. Both parties have testified that they are involved in their child's education [and] her activities. Based upon the testimony that has been presented today, the Court is of the opinion that [Margaret] has been the primary caretaker of the child for much of her life.

The capacity and disposition of each party to give the child love, affection, and spiritual guidance, and to continue the education and rearing of the child[:] Based upon the testimony, I think the parties are equal in their ability to love and to give affection to the child. I think that each of them show[s] and express[es] their love towards the child in different ways. [Jody] is involved in different aspects of her life, as fathers are. [Margaret], I think you are involved in other areas of her life. . . . Regarding the spiritual guidance, the testimony was that while Brooke is in [Jody's] home that they attend Beulah Baptist

6

Church. While Brooke is at Mrs. Margaret's home they attend Christian Worship Center service. Apparently Mr. Dufour attends Sacred Heart. So, apparently they do not go to church as a family. Regarding the ability to continue the education and rearing of the child, given that [Margaret] is an RN, it indicates to the Court that she places a significant value on education and the ability and benefits that come from that, however, recent history is very concerning to the Court. Brooke is going to go to school wherever it is more convenient for [Margaret] to take her to school, whether that's Georgetown, whether that's Converse, whether that's Pineville, that's not how you decide where your child is going to go to school.

. . . .

The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs[:] … I think history has indicated that [Margaret] has been the primary provider for Brooke during her life. [Jody] has recently began working and has recently been providing for her needs to a certain extent, however, we've got more than a year and half history under our belt. And [Margaret] is the one providing the medical insurance. She is the one that has consistently been working and providing for the child's needs. The Court thinks that factor weighs in her favor.

The length of time that the child has lived in a stable adequate environment and the desirability of maintaining continuity in that environment[:] . . . We have a child who lived for approximately 10 years in Georgetown, then she moved to Bentley, then she moved to Converse, then she moved to Bentley or Georgetown depending on who you believe. Then she moved to Pineville, and we're trying to move again but we don't know where. Dad has always lived in Georgetown. I don't think we could drive him out of Georgetown. I guess, [Margaret] what concerns me somewhat about all the moves and all the men, is that the entire time you were working as a Registered Nurse, you had the financial ability to provide more stability for your daughter than you did. And the lack of stability is a serious concern for the Court. The Court thinks that this factor strongly weighs in favor of [Jody].

The permanence as a family union of the existing or proposed custodial homes; again, that factor clearly weighs in favor of [Jody]. I don't know where [Margaret's] moving after [her current home in Pineville]. I don't know who is going to live there[.] . . . [Margaret's] current living condition, has only existed a few months.

The moral fitness [of] each party insofar as it affects the child[:] there have been allegations of [Jody] being abusive during the marriage, the Court did not see that in any of the pleadings. There was no proof introduced to support that. With respect to the moral fitness

of [Margaret], there's been testimony and some evidence presented today [of Margaret] living with men and bringing men around the children while she was married to another man, there is a moral aspect to that issue that the Court notes. The Court is really more concerned about the introduction of these men that [Margaret] barely knows, to the child as a father figure. Mr. Dufour complained on the stand that … the child does not view him as a father figure yet. . . . It takes time to be a father or to be viewed as a father. . . . So, we go from Coutee, who was an abusive drunk, back to [Jody] who is by [Margaret's] testimony abusive and not a good provider. Now, we are with Mr. Dufour. I do have some concerns about the, whether it's the moral decision-making of [Margaret], I have some abilities [sic] about [Margaret's] decision making as it affects the child and how well she's thinking these things out. Because, in the [Court's] opinion, she's not.

The mental and physical health of each party[:] there's been no testimony that [either] party is either mentally or physically impaired.

. . . .

The home, school, and community history of the child[:] that factor clearly weighs in favor of [Jody,] [a]s the home, school and community history of the child, although only for 10 years, has been Georgetown. The reasonable preference of the child[:] that has not been presented …

The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party[:] … [I]t sounds like the parties were doing a pretty good job of maintaining that relationship and facilitating a relationship between the child and the parents until child-support got involved … The Court expects that once this is settled that the parties will be able to cooperate with each other and continue to parent this child.

The distance between the respective residences[:] currently [Margaret] is residing in Pineville, she works in Olla. Every day that she works she drives right past Georgetown. So, the distance is not that great. . . . [Jody] has indicated a willingness to drive wherever to meet [Margaret] for any custody changes that are necessary. Therefore, the Court does not feel that the distance between the current residences will pose a problem for the custody schedule that will be imposed.

The responsibility for the care and rearing of the child previously exercised by each party[:] as the Court previously indicated, that prior to this past [s]ummer, I think that [Margaret] was clearly the primary custodian of the child[, n]oting that [Jody] has

been in the child's home until the divorce. Prior to the divorce [Jody] was not working, therefore he would've been there and assisted in rearing of the child. Since the divorce, it sounds like Brooke has been primarily with the mother with the exception of this past [s]ummer where the child was spending an approximately equal amount of time between the parties. . . ."

Given the parties['] work schedules, the support system that [Jody] has in place, the support system that [Margaret] has in place, that has previously been exercised by both of them … [Margaret] has used her mother, she has used her [older] daughter. [Jody] has his mother, he has other family in the area. These parties are both working. . . . The Court thinks this is clearly a case where the parties should share equal custody of the child. . . . The primary issue is domiciliary designation. As I indicated … I have some serious problems with the decisions [Margaret has] made over the past two years and the decisions [she is] continuing to make, particularly allowing the child to stay in a room with two teenage boys that she barely knows. . . . [T]herefore, I'm going to designate [Jody] as the domiciliary parent.

The trial court's well-reasoned analysis of the factors set forth in La.Civ.Code art. 134, the weight it gave to each of the factors, and its ultimate decision are given great weight, and are reasonably supported by the testimony and evidence in the record. Therefore, we find no error with the trial court's assessment of the best interest of the child under La.Civ.Code art. 134, or its designation of Jody as domiciliary parent.

Margaret argues on appeal that the trial court impermissibly based its designation of Jody as the domiciliary parent on the opportunity for sexual conduct between Brooke (age eleven) and Mr. Dufour's sons (ages eleven and fifteen), who share a room at Margaret's home in Pineville. While we agree with Margaret that the record does not support a finding that any such conduct has occurred, as shown above, the trial court's decision was ultimately based on a thorough evaluation of all of the facts and circumstances. Moreover, the trial court's consideration of the sleeping arrangements at Margaret's home, and the fact that neither Margaret nor

Brooke knew Mr. Dufour's sons particularly well, as factors relevant to the best interest of the child was reasonable.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of these proceedings are assessed to Appellant, Margaret Kendrick Dufour.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal. Rule 2–16.3.