NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 15-1151


MICHAEL DAVID CHICOLA

VERSUS

JOANN MARIE CHICOLA


**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 246,807
HONORABLE MONIQUE FREEMAN RAULS, DISTRICT JUDGE

**********

D. KENT SAVOIE
JUDGE

**********

Court composed of Billy Howard Ezell, Shannon J. Gremillion, and D. Kent Savoie, Judges.


AFFIRMED.

**Adam Huddleston**
**Huddleston Law, L.L.C.**
**500 Main Street**
**P. O. Box 4598**
**Pineville, LA 71360**
**(318) 787-0885**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Michael David Chicola**

**Martha R. Crenshaw**
**Gold, Weems, Bruser, Sues & Rundell**
**2001 MacArthur Drive (71301)**
**P. O. Box 13973**
**Alexandria, LA 71307-6118**
**(318) 445-6471**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Joann Marie Chicola**

**SAVOIE, Judge.**

Plaintiff Michael D. Chicola (Michael) appeals the ruling of the trial court in favor of Defendant Joann M. Chicola (Joann) regarding domiciliary custody. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On February 22, 2013, Michael filed a Petition for Divorce from his wife Joann. In the petition, he requested that he be named the domiciliary parent of their minor child, Destiny Chicola (Destiny). The parties reached a consent judgment on June 10, 2013, whereby Joann was named the domiciliary parent subject to reasonable visitation in favor of Michael Chicola. On April 1, 2014, Michael filed a Rule for Contempt, For Modification of Child Custody, Petition to Partition Community Property, Request for Incidental Relief. While this rule was pending, numerous rules for contempt were filed by both parties.

On August 22, 2014, Michael filed a pro se Petition for Protection from Abuse on behalf of Destiny. Michael alleged Joann whipped the minor child with a fly swatter which left lacerations and bruises. An order of protection was signed by the trial court, granting temporary custody of Destiny to Michael as part of the order. On the same day and unaware of the court filing, Joann sent Destiny to school; however, Destiny did not return on the bus as was customary. She later learned of the order of protection through the Rapides Parish Sheriff's Office. At this point, Michael enrolled Destiny in another school.

Joann has never denied that she spanked the child with a fly swatter when Destiny purposefully urinated on a pile of clothing and no other discipline technique was working. She was subsequently charged by the State with one count

of Cruelty to a Juvenile and one count of Violation of a Protective Order. She entered pleas of not guilty, completed an anger management class and a parenting class, and the charges were dismissed.

After she sent her daughter on the bus that morning, Joann Chicola did not see her daughter for more than a year. A no-contact order was in place until December 5, 2014, when it was lifted by the trial court. At the same time, the trial court ordered supervised visitation between Joann and Destiny for four hours on Saturdays and Sundays until the parties agreed on a custody arrangement. Michael refused to comply with the court order regarding Joann Chicola's visitation. On May 26, 2015, Michael filed a Rule to Make Interim Custody Order Permanent which was heard September 1, 2015. The trial court ruled in favor of Joann Chicola, naming her domiciliary parent and ordering joint, shared custody of Destiny. Michael now appeals.

**LAW**

The standard of review in child custody matters has been stated by this court as follows: "[A] trial court's determination in a child custody case is entitled to great weight on appeal and will not be disturbed unless there is a clear abuse of discretion." *Hawthorne v. Hawthorne,* 96–89, p. 12 (La.App. 3 Cir. 5/22/96), 676 So.2d 619, 625, *writ denied,* 96–1650 (La. 10/25/96), 681 So.2d 365.

In a child custody proceeding, the trial court must consider all factors relevant to the child's best interest. La.Civ.Code art. 134. Further,

> [t]he court is not bound to make a mechanical evaluation of all of the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors. The court is not bound to give more weight to one factor over another, and when determining the best interest of the child, the factors must be weighed and

2

> balanced in view of the evidence presented. Moreover, the factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court.

*Thibodeaux v. O'Quain,* 09–1266, p. 5 (La.App. 3 Cir. 3/24/10), 33 So.3d 1008, 1013 (quoting *Cooper v. Cooper,* 43,244, p.6 (La.App. 2 Cir. 3/12/08), 978 So.2d 1156, 1160).

Michael argues that he proved clear and convincingly that it is in Destiny's best interest that he be named domiciliary parent. Louisiana Civil Code Article 134 sets forth the following factors in determining the child's best interest:

> (1) The love, affection, and other emotional ties between each party and the child.

> (2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

> (3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

> (4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

> (5) The permanence, as a family unit, of the existing or proposed custodial home or homes.

> (6) The moral fitness of each party, insofar as it affects the welfare of the child.

> (7) The mental and physical health of each party.

> (8) The home, school, and community history of the child.

> (9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

> (10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.

(11) The distance between the respective residences of the parties.

(12) The responsibility for the care and rearing of the child previously exercised by each party.

In the oral reasons for ruling, the trial court determined:

In this case, I am going to say most of the factors, the parents weighed equally in this Court's opinion. And, because both parents, when the child was with Mrs. Cole, she was getting the child healthcare, was getting treatment from a physician, as well as the father when the child lived with the father. The child lived with the mother up until August Twenty--second of Two Thousand and Fourteen. So, I think the child has a love for both parents.

There has been counseling with Mrs. Cole over a year. And over this year period, the thing that bothered me about this case was Factor Number 10, which says that there has to be a willingness and ability of each party to facilitate, encourage a close and continuing relationship between the child and the other parent.

This court finds that there was not a willingness and ability of the father to facilitate and encourage a close and continuing relationship between the child and the other parent. It was just the opposite. The court is of the opinion that while this child has been in the father's custody, there has been no attempt whatsoever to have a relationship with the mother. Even the counseling continued for a year, Mrs. Cole didn't attempt to try to bring the mother in on the counseling, didn't encourage, didn't say that the mother needs to communicate with the child. She said that the mother, she – the child love[s] the mother. There was some expression of a desire by the child to see the mother when the child was counseling with Ms. Cole, but yet nothing happened.

There [were] several court orders for the child to spend time with the mother, yet nothing happened. There was some information about going to visit the mother without a call, without a text, any communication, and arriving at a home but yet not knocking on the door. That's not good faith. When you go to someone's home for a visit, you knock on the door and make sure someone's there. You check. You don't drive all the way to someone's home without given them any notice of it . . . . That's not good faith. That's not reasonable. So, because the Court finds that there was not a willingness, and the, and the Court [doesn't] believe there will be a willingness and ability to facilitate and encourage a close relationship.

4

The trial court went on to state that it believed Joann did encourage a relationship between the child and the father. The trial court's ruling is supported by the record.

Michael argues that the trial court erred because Joann failed to prove "love and affection" between herself and the child. However, the record is clear that, during the year that she was kept from seeing her mother, Destiny repeatedly asked about her mother and stated on numerous occasions that she missed her mother. This argument is without merit.

Moreover, there was no finding of malnourishment as Michael argues. There is evidence in the record that Destiny was a "failure to thrive" baby which would account for her low weight. Additionally, Michael contends that Destiny was abused by her mother. While Joann admitted to spanking Destiny with a fly swatter, she completed an anger management course and a parenting class, and the charges against her were dismissed. There is no other incident of alleged abuse in evidence. Therefore, this argument is without merit as well.

It is clear that the deciding factor for the trial court in determining best interest of the child was factor number ten, "The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party." Michael went to great lengths in order to keep Destiny away from her mother, including defying court orders. There was no good faith effort made by Michael to allow a relationship between Destiny and her mother for over a year.

Michael contends that the trial court arbitrarily gave undue weight to this factor, arguing that the trial court completely disregarded the testimonies of Dr. Grant and Ms. Hayes. Dr. Grant saw Destiny after the flyswatter incident. This

was the first time Dr. Grant had examined Destiny as she was not Destiny's regular pediatrician. At trial, Dr. Grant testified as to Destiny's injuries as a result of being spanked with a flyswatter.

Ms. Hayes is a Speech Language Pathologist who testified as to Destiny's poor hygiene at school while she was living with her mother. She also stated that Destiny exhibited "odd" behaviors, *i.e.* eating crayons, at that time as well. However, she also testified that, at the time of trial while she was living with her father, Destiny was still exhibiting "worrisome" behavior, such as picking her fingernails until they bled. While there is evidence to support both parents' bid for domiciliary custody, the trial court is afforded great discretion in its weighing of the evidence, and we do not believe the trial court erred in this case.

The testimony and evidence presented in the record that is before us supports the trial court's award of domiciliary custody to Joann, and the trial court's decision is not an abuse of discretion.

## DECREE

For the reasons set forth above, the trial court's judgment awarding domiciliary custody to Joann Marie Chicola is affirmed. Costs of this appeal are assessed to appellant, Michael David Chicola.

**AFFIRMED.**

This opinion is **not designated for publication**. Uniform Rules—Courts of Appeal, Rule 2–16.3.