# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**22-563**

**JOHN DAVID DEAN**

**VERSUS**

**CHRISTIE LYNN BURKEEN**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 201310238
HONORABLE DAVID A. BLANCHET, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## VAN H. KYZAR
### JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Van H. Kyzar, and Ledricka J. Thierry, Judges.

**AFFIRMED.**

**Dwazendra J. Smith**
**D. Smith Legal, L.L.C.**
**P. O. Box 93004**
**Lafayette, LA 70509**
**(337) 534-4020**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
**John David Dean**

**Danielle Claiborne**
**626 Broad Street**
**Lake Charles, LA 70601**
**(337) 439-3939**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
**John David Dean**

**Michael A. Rainey**
**P. O. Box 80067**
**Lafayette, LA 70598**
**(337) 504-5558**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Christie Lynn Burkeen**

**KYZAR, Judge.**

The father, John David Dean, appeals the trial court judgment granting sole custody of his two children to the mother, Christie Lynn Burkeen, and suspending his visitation with the children, as provided for in the Post-Separation Family Violence Relief Act, after finding that the father committed sexual abuse of his daughter. He further appeals the award of $4,000.00 in attorney fees to Christie Lynn Burkeen's counsel. For the reasons set forth, we affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

Christie Lynn Burkeen (Christie) and John David Dean (John) are the parents of two minor children, AMD, born January 30, 2008, and LJD, born February 9, 2011.[1] The parties were never married. John initially filed a petition in March 2013, for joint custody of the children, with Christie being named the domiciliary parent and John having reasonable visitation. On May 16, 2013, the parties entered into a consent judgment for joint custody of the children, with Christie named the domiciliary parent and with John granted fixed visitation rights and ordered to pay child support. Subsequently, Christie filed a petition to modify the judgment, requesting an increase in child support. By consent judgment dated March 13, 2014, the parties resolved the issue of support, and the judgment maintained the previous custody arrangement.

In August 2015, John filed a petition seeking to decrease the child support set forth in the March 13, 2014 judgment and to increase his visitation time with the children. The matter was heard before a hearing officer on October 22, 2015, resulting in a recommended judgment decreasing John's child support, increasing his visitation, and, proportioning the children's medical expenses between the parties.

---

[1] The initials of the children are used to protect their identity. Uniform Rules—Courts of Appeal, Rules 5-1, 5-2.

As no objection was made to the recommendations, a judgment was signed by the trial court on November 10, 2015, adopting the hearing officer's recommendations as the judgment of the court.

On February 25, 2019, Christie filed a rule to modify child support and for contempt, alleging that John had failed to pay his proportion of various medical expenses. After some service delays, John filed a motion to modify custody and visitation. On July 28, 2021, Christie filed an ex parte rule to modify the previous custody judgment, alleging that AMD had disclosed on June 1, 2021, that her father had been inappropriately touching her since she was around six years old. All of these issues were heard before the hearing officer, resulting in findings and recommendations issued on July 22, 2020. The matter was set for trial after John objected to the recommendations.

During the two-day trial, AMD, LJD, Christie, and John all testified. At the conclusion of the trial, the trial court announced its reasons for judgment, citing specific factual and credibility determinations, as detailed in the following:

> All right. The Court is ready to rule in this matter. This is a custody matter, so the Court applies Civil Code Article 132. (Reading): "If the parents agree who is to have custody, the Court shall award custody in accordance with their agreement unless the provisions of 9:364 apply or the best interest of the child requires a different award. Subject to the provisions of R.S. 9:364, in the absence of agreement, or if the agreement is not in the best interest of the child, the Court shall award custody to the parents jointly; [h]owever, if custody in one parent is shown by clear and convincing evidence to serve the best interest of the child, the Court shall award custody to that parent."
>
> Article 134(B) of the Civil Code says, (Reading): "In cases involving a history of committing family violence, as defined by R.S. 9:362, or domestic abuse, as defined by R.S. 46:2132, including sexual abuse, as defined in R.S. 14:403, whether or not a party has sought relief under any applicable law, the Court shall determine an award of custody or visitation in accordance with R.S. 9:341 and 364. The Court may only find a history of committing family violence if the Court finds more than one incident or one incident with serious bodily injury." So those are the applicable statutes here that the Court has to consider in all custody cases.

2

So after hearing the evidence and testimony, the Court finds that the minor child, [AMD], for at least the last couple of years, has been suffering from depression, and the Court would characterize it as "serious depression," and that she was also engaging in cutting herself. In addition, she had much more than a suicidal ideation. She, actually, had a plan to kill herself, and she disclosed this to a counselor. And the way that the plan was disclosed does not appear to this Court to have been something she just made up on the spot. She, basically, told the counselor that she was going to go to her father's house the next day. She knew the combination to his gun safe, that she was going to take a gun, and she was going to shoot herself and kill herself. This resulted in a hospitalization of her, and she's been in counseling, to some degree, off and on since then.

According to the testimony of Ms. Burkeen, the children often complain[ed] to her that they didn't like the treatment at their father's home, that he was drinking, and that he and his wife frequently argued. Ms. Burkeen said she attempted to speak to Mr. Dean about this on occasion, but found that communication was poor, and it was difficult to communicate with him. Mr. Dean also acknowledged that the parties have poor communication. Ms. Burkeen would encourage her children to try to talk to their father about the situation. She didn't file anything; she didn't make a big deal out of it. She kept putting them in the position of having to deal with their issues with their father.

Both children verified in their testimony that they didn't like the way things were at their father's home, there was frequent arguing. [LJD], in his own way, indicated that the father was impaired at least a couple of times during each visit, speaking funny and acting weird. This was also verified by [AMD].

So the Court believes that there's substance abuse going on in Mr. [Dean's] home. That's one of the things on the Court's short list, is that he would need to be assessed for a substance abuse disorder.

[AMD] testified in court. She also was interviewed by Hearts of Hope. The Court viewed that interview. It was put into evidence. Both parties had the opportunity to inter -- view it. The Court found that the Hearts of Hope interview and [AMD's] testimony were consistent. The Court does not believe, and does not find, that Ms. Burkeen has coached [AMD]. When Mr. Dean called her on the phone regarding [AMD] waking up and saying something to him -- which he denies, but I believe that phone call occurred -- she didn't make a big deal about it. She really didn't do anything about it. I have been a lawyer and a Judge for 41 years. I can say -- and I'm not in any way criticizing her, but there are many mothers that would have hit the roof on this. So if she had some plan all along to get him, she, certainly, didn't take the opportunity at that point in time.

As I said earlier, with the children's frequent complaints, she didn't file anything, she didn't try to diminish his time. She just

3

encouraged the children to try to talk to their father, to try to change things.

Of course, we get to a situation where [AMD] doesn't want to visit with her dad. She's ordered into reconciliation counseling. The Court finds that Ms. Burkeen, for the most part, did cooperate in that reconciliation therapy. So it wasn't until [AMD] was to begin visiting with her father again that she revealed that her father had been touching her inappropriately, fondling her. Both [AMD] and Ms. Burkeen describe a very emotional situation where [AMD] was sobbing, overwrought in telling her mother about what had happened to her. A friend of [AMD's] was also there. [AMD] did tell the Court that she had previously told that friend about the circumstance.

[AMD], also, in her testimony, revealed to the Court that she was fully aware that her allegations against her father were going to change things in her life in a dramatic way. She knows that she's jeopardized her relationship with her paternal grandmother. She, actually, stated that she feels that she's being treated differently. She knows that she's probably damaged, or will lose the relationship, with her paternal aunts, as well as the father's extended family. She also knows that she will put an impediment in place with her relationship to her two younger siblings, who she indicated she misses very much. [LJD] also stated that he missed his two younger siblings a great deal. The children didn't seem to miss the contact with their father. In fact, with the frequent arguments in the home, I don't really think they were going there for any reason other than to see their younger siblings.

So after looking at all the facts here -- and the Court finds that the testimony of [AMD] was very credible -- the Court finds there's clear and convincing evidence that Mr. Dean has sexually abused [AMD] by engaging in indecent behavior and molestation of her. As such, the Post-Separation Family Violence Relief Act applies to this case, and that would be under R.S. 9:341. (Reading): Whenever the Court finds by clear and convincing evidence that a parent has subjected any of his children, to sexual abuse as defined in R.S. 14:403, the Court shall prohibit all visitation and contact between the abusive parent and the children until such parent proves by a preponderance of the evidence at a contradictory hearing that he has successfully completed a treatment program designed for sexual abusers." [R.S.] 9:364 says that, (Reading): "The presumption shall be overcome only if the Court finds in a future proceeding all of the following by a preponderance of the evidence: Number one, the perpetrating parent has successfully completed a court-monitored domestic abuse intervention program as defined in R.S. 9:362." However, this case would be a treatment program designed for sexual abusers after the last instance of abuse. "The perpetrating parent is not abusing alcohol or using illegal substances scheduled in R.S. 40:964." And then the Court must also find "The best interest of the child or children, considering the factors listed in Civil Code Article 134, requires the perpetrating parent's participation as a custodial parent because of the other parent's absence,

4

mental illness, substance abuse, or other circumstances negatively affecting the child or children."

"If the Court finds, by clear and convincing evidence, that a parent has sexually abused his or her children or child, the Court shall prohibit all visitation and contact between the abusive parent and the children pursuant to R.S. 9:341."

So the Court will sign an LPOR form under the Post-Separation Family Violence Relief Act prohibiting contact. The burden would be upon Mr. Burkeen -- excuse me, Mr. Dean, to show that he's not abusing alcohol, that he has completed a treatment program for sexual abusers, and that it's in the best interest of his children that his contact be reinstated.

Let me just comment that the findings of DCFS have no binding effect on this Court. This Court is not bound by anything they do. This Court makes its own determinations. Also decisions of prosecutors, whether to bring charges or not, also has no bearing upon this Court. They have a different standard of proof that [sic] this Court does.

And, finally, let me say, that I was struck by Mr. Dean's testimony about how he felt when his daughter made these accusations. His answer was, "I was aggravated." That seems to be a very strange emotion to me. If my daughter said I was doing something I had not done, I think I'd be prostrate on the floor, crying my eyes out, wondering why this was happening to me. But that was not his reaction. So I find that to be quite unusual as well.

That's the Court's ruling. I have to assess Mr. Dean with all court costs. I don't know if -- Counsel, you asked for attorney's fees? I don't know if that was prayed for.

A formal judgment was rendered on April 13, 2022, awarding sole custody of the children to Christie. In the judgment, the trial court decreed that it found, by clear and convincing evidence, that John had sexually abused AMD; thus, no visitation was granted to John until further orders of the trial court pursuant to La.R.S. 9:364.[2] The trial court further issued a permanent injunction in favor of Christie and the minor children against John on a separate Louisiana Protective Order Registry form. It also ordered continuing counseling for AMD and rescinded a previous order

---

[2] Although the judgment states that John's visitation was prohibited "until further orders of the court pursuant to La. R.S. 9:364(D)[,]" the correct subsection is La.R.S. 9:364(F).

5

for reconciliation counseling between her and John. Further, in accordance with the parties' stipulations, the trial court ordered John to pay $4,000.00 in attorney fees to Christie's counsel, noting in the judgment that John had paid the same in full at the time of signing. Finally, pursuant to La.R.S. 9:367, the trial court assessed John with all court costs, including the costs of AMD's counseling.

A motion for a new trial was denied, without hearing, on April 12, 2022. This appeal followed, wherein John asserts the following assignments of error:

1. The trial court erred in modifying custody and granting sole custody to Ms. Burkeen.

2. The trial court erred in granting a permanent protective order.

3. The trial court erred in granting Ms. Burkeen attorney's fees.

## OPINION

Citing *Evans v. Lungrin*, 97-541 (La. 2/6/98), 708 So.2d 731, John argues that the applicable standard of review should be *de novo* because multiple errors made by the trial court interdicted the factfinding process. Alternatively, he submits that the trial court's findings were manifestly erroneous, clearly wrong, and an abuse of discretion in light of AMD's conflicting testimony and the documentary evidence introduced into the record. We disagree that the *de novo* standard applies because John has not pointed to any specific evidentiary ruling interdicting the trial court's factfinding process nor any misapplication or misinterpretation of the law by the trial court. Thus, this matter will be reviewed under the manifest error standard of review.

Under this standard, an appellate court will not set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). "This is especially applicable in a child custody dispute wherein appellate courts accord substantial deference to the trial judge's

6

conclusions." *LeBlanc v. LeBlanc*, 06-1307, p. 4 (La.App. 3 Cir. 3/7/07), 953 So.2d 115, 119. "Particularly applicable . . . is the supreme court's explanation that 'whether sexual abuse occurred is a factual finding that belongs within the province of the trial court's decision-making function.'" *Menard v. Menard*, 19-580, pp. 22-23 (La.App. 3 Cir. 3/11/20), 297 So.3d 82, 96-97 (quoting *C.M.J. v. L.M.C.*, 14-1119, p. 21 (La. 10/15/14), 156 So.3d 16, 31).

In order to reverse a trial court's finding of fact, an appellate court must find: (a) that a reasonable factual basis does not exist for the trial court's finding; and (b) "'that the record establishes that the finding of the trial court is clearly wrong (manifestly erroneous).'" *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987) (quoting *Arceneaux v. Dominque*, 365 So.2d 1330, 1333 (La.1978)). The court must further be mindful that if the trial court's findings are reasonable based upon a review of the entire record, it may not reverse those findings "even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990). This principle is grounded not only upon the better capacity of the trial court to evaluate live witnesses, rather than a cold record on appeal, "but also upon the proper allocation of trial and appellate functions between the respective courts." *Canter v. Koehring Co.*, 283 So.2d 716, 724 (La.1973).

Furthermore, with regard to child custody matters, this court, in *Arrington v. Campbell*, 04-1649, p. 2 (La.App. 3 Cir. 3/9/05), 898 So.2d 611, 612, has stated:

> "The trial court is in a better position to evaluate the best interest of the child from its observances of the parties and witnesses; thus, a trial court's determination in a child custody case is entitled to great weight on appeal and will not be disturbed unless there is a clear abuse of discretion." *Hawthorne v. Hawthorne*, 96-89, p. 12 (La.App. 3 Cir. 5/22/96), 676 So.2d 619, 625, *writ denied*, 96-1650 (La.10/25/96), 681 So.2d 365. Under Louisiana Civil Code Article 131, decisions regarding custody of the children are made with the best interest of the child being paramount. Louisiana Civil Code Article 134 provides a

7

number of factors to be considered in making the best interest determination. These factors are merely suggested factors, and the trial court is free to use other factors to make its determination. *Aucoin v. Aucoin*, 02-756 (La.App. 3 Cir. 12/30/02), 834 So.2d 1245. However, the trial court should consider the totality of the facts and circumstances in its analysis of the best interest of the child.

### *Assignments of Error Numbers One and Two*

In his first 2 assignments of error, John asserts that the trial court erred in granting sole custody of the children to Christie and in issuing a permanent injunction against him pursuant to La.R.S. 9:364. As both of these assignments relate to John's assertion that the trial court erred in finding that he sexually abused AMD, we will address them together.

At the outset, John argues that "the trial court erred in determining that AMD was credible, as she herself admitted that she previously lied and there were several discrepancies in her trial testimony, which was inconsistent with previous testimony and the documents submitted into evidence at trial." We disagree.

Despite any alleged inconsistencies, including AMD's failure to report the sexual abuse to previous counselors, as opposed to the emotional and substance abuse she did report, the trial court found AMD to be "very credible." The trial court explained its rational for its credibility determination, recounting AMD's fears that her disclosure would jeopardize her relationship with her paternal grandmother and aunts and, especially, with her half siblings, who she stated she missed very much. Indeed, the reluctance of a young child to report instances of a parent's bad behavior, especially sexually deviant behavior perpetrated on the child, is understandable. "It is well known and documented that sexual abuse of children is extremely difficult to detect because 'the offense often takes place in secret, the victim is young, vulnerable, and reluctant to testify, and there is often no physical or other evidence the abuse took place.'" *Folse v. Folse*, 98-1976, p. 13 (La. 6/29/99), 738 So.2d 1040,

8

1047 (quoting *State v. Miller*, 98-301, p. 4 (La. 9/9/98), 718 So.2d 960, 962). The trial court further found that AMD's testimony was consistent with her Hearts of Hope interview and that it did not find that AMD had been coached by Christie. Accordingly, we find no manifest error in the trial court's decision concerning AMD's credibility.

John next argues it was not in the children's best interest that Christie be granted sole custody because, although he denied the sexual abuse, Christie failed to act immediately once the allegations surfaced. He points to Christie's testimony regarding an alleged incident in 2017, where she claimed that he disclosed to her that he had awoken during the night to find himself pulling down AMD's panties. Although he denies this conversation ever took place, he faults Christie for never reporting the incident. Christie admitted that although she was shocked by what John related, she did not report the incident because AMD never mentioned it to her, and she "assumed it was just a freak accident." John further points out that Christie waited two days after AMD's June 1, 2021 disclosure before reporting the sexual allegations to the police. Christie explained that she delayed reporting the information because she was trying to get more information from AMD and because she was in shock.

We find John's argument convoluted at best. On the one hand, he faults Christie for not acting more quickly in response to the sexual abuse allegations, but on the other, he denies any malevolent intent and all allegations of sexual abuse. In any event, the trial court considered this evidence when stating that in the time leading up to AMD's disclosure of the sexual abuse, Christie "encouraged the children to try to talk to their father, to try to change things[]" and that Christie "for the most part, did cooperate in that reconciliation therapy." Furthermore, the trial court found that it believed that the 2017 conversation between John and Christie

9

did occur. Based on the trial court's reliance on AMD's testimony, we find no manifest error in its decision that it was in the best interest of the children that sole custody be awarded to Christie.

Next, John argues that the trial court erred in granting a permanent protective order because the sexual abuse was not proven by clear and convincing evidence, given AMD's lack of credibility. Louisiana Revised Statutes 9:341(B) plainly prohibits visitation and contact between a parent and his child if the trial court finds, by clear and convincing evidence, that the parent sexually abused the child. This prohibition continues until the parent proves, by a preponderance of the evidence at a contradictory hearing, that he has successfully completed a treatment program designed for sexual abusers. La.R.S. 9:341(B). Furthermore, La.R.S. 9:364(F) provides that "[i]f any court finds, by clear and convincing evidence, that a parent has sexually abused his or her child or children, the court shall prohibit all visitation and contact between the abusive parent and the children pursuant to R.S. 9:341."

"[T]he clear and convincing evidence standard requires more than a 'preponderance of the evidence' but less than 'beyond a reasonable doubt.'" *Succession of Young*, 96-1206, p. 3 (La.App. 3 Cir. 3/5/97), 692 So.2d 1149, 1151. "To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence." *State in Interest of K.D.*, 586 So.2d 692, 695 (La.App. 1 Cir. 1991).

The trial court concluded that the burden of proof was met in this case. We find no manifest error in that decision given our deference to the trial court's determination as to AMD's credibility. While the testimony of a sex-crime victim can be sufficient to establish the elements of a crime beyond a reasonable doubt, the same would be equally true, if not more appropriate, in establishing the elements of a crime by clear and convincing evidence. *State v. Gresham*, 21-680 (La.App. 3 Cir.

10

3/30/22), 350 So.3d 571, *writ denied*, 22-717 (La. 9/7/22), 345 So.3d 428. Consequently, we find that the trial court was required to prohibit all visitation and contact between John and AMD. Thus, we find this assignment of error lacks merit.

*Assignment of Error Number Three*

In his final assignment of error, John asserts that the trial court erred in awarding attorney fees because Christie failed to request them in her pleading seeking a change of custody. At the conclusion of the trial, the trial court stated the following: "[Attorney fees] may be mandatory. You can check the statute. I'll let you file a post-trial memo if you think it's mandatory that I award your attorney's fees. I'm not going to rule on that issue. I will assess him with the court costs." The April 13, 2022 judgment awarded $4,000.00 in attorney fees to Christie's counsel.

The trial court's assessment of attorney fees is based on La.R.S. 9:367, which is part of the Post-Separation Family Violence Relief Act. La.R.S. 9:361-369. Louisiana Revised Statutes 9:367 provides as follows:

> In any family violence case, all court costs, attorney fees, costs of enforcement and modification proceedings, costs of appeal, evaluation fees, and expert witness fees incurred in furtherance of this Part shall be paid by the perpetrator of the family violence, including all costs of medical and psychological care for the abused spouse, or for any of the children, necessitated by the family violence.

Thus, La.R.S 9:367 specifically provides that the perpetrator of family violence[3] shall pay attorney fees incurred in furtherance of the enforcement of the Post-Separation Family Violence Relief Act, even if the demand for such was not included in the pleadings. *Jarrell v. Jarrell*, 35,837 (La.App. 2 Cir. 2/27/02), 811 So.2d 207. Accordingly, we find no error in the decision of the trial court to impose such fees. Further, as to the specific award of $4,000.00, it is clear that the parties stipulated to that amount as set forth in the judgment which was approved as to form

_____

[3] Pursuant to La.R.S. 9:362(F), the term "family violence" includes sexual abuse.

11

and content by counsel for both parties. Thus, we find no error in the decision of the trial court to award attorney fees in this amount.

## DECREE

For the reasons provided, the judgment of the trial court is affirmed. All costs of this appeal are assessed to John David Dean.

**AFFIRMED.**